**Clara DAMBACH, Plaintiff-Respondent,**

**v.**

**Charles JAMES and Hursel James, Defendants-Appellants.**

**No. 10811.**

Missouri Court of Appeals, Southern District, Division One.

Sept. 19, 1979.

Melvin E. Carnahan, Rolla, for plaintiff-respondent.

Ronald J. Fuller, Rolla, for defendants-appellants.

PREWITT, Judge.

Defendants appeal from a finding and judgment of the trial court quieting title in plaintiff to land in Maries County, Missouri and finding against defendants on their claim to have title quieted in them.

The land in question is a triangular tract seventy-three hundredths of an acre in size. It is bordered on the north by a government survey lot line and on the east by the Gasconade River. At that point the river flows almost due north. The tract is bordered on the west and south by a "stream" which flows across the lot line in a southeasterly direction into the Gasconade. Plaintiff has record title to Lot 4 of a government section. The land in dispute is part of Lot 4. Plaintiff paid the taxes on Lot 4 for many

years prior to the time of trial. Defendants claim no record title to any of Lot 4 but own all or a portion of Lot 5 lying immediately north. Defendants' claim to the property is based upon adverse possession pursuant to § 516.010 and § 516.070 RSMo 1969. While it was undisputed at the trial that defendants were exercising dominion over at least a portion of the property in question, the length of time of the adverse possession was seriously contested.

Going from west to east, a fence runs generally along the lot line separating the property of plaintiff and defendants until it comes to a bank southwest of the stream. Then the fence runs along the bank in a southeasterly direction. Plaintiff testified that the fence had been installed there by her husband and her mother's hired hand about 1927 or 1928. Previously there was a fence continuing along the lot line to the Gasconade River, but it was changed because of the deep bank or ditch. A water gate couldn't be put across the stream and it was necessary to run the fence in this manner to keep hogs in. The fence is now in a state of disrepair. The property had previously been owned by plaintiff's mother. Defendants offered evidence that this triangular strip had been used by their predecessor in title, defendant Charles James' father, as pastureland and to water his cattle. Defendants also contended that they had pastured the land until they improved it and made it a part of their resort. Defendant Charles James stated he cleaned it up and has been in the business of renting it out for campers and has placed picnic tables on it for about ten to twelve years. Other defendants' witnesses testify similarly. Previous to this, the area had been in its natural state, often described by the witnesses as "rough" and a "wilderness". In cleaning the property, defendants cut brush and weeds but no trees.

Plaintiff does not dispute that defendants did clean up a portion of the property and made it into a "picnic area" and had been taking care of it for some time. The dispute is whether or not it has been for at least ten years. Plaintiff testified that she was through the area three years before her husband died. He died in 1971. She saw a path from the defendants' cabin to the river and a waste can next to the ditch. She didn't know defendants were claiming the property until she arranged for timber to be sold in 1975 and defendants refused to allow the logger to cut on the triangular tract. She disputed that defendants' predecessor watered cattle in the area. Defendants claimed they had always thought the property was theirs because of the location of the fence. A road defendants constructed loops into the tract and defendants made other improvements to the north of the disputed area in connection with the use of it, but not on it. They installed a pole light on the lot line which lights at least a portion of the disputed area. They also constructed a boat ramp north of the lot line.

The trial court found that the picnic tables were placed on the property less than ten years before the suit was filed and that defendants had failed to carry the burden of proof that their possession was exclusive and hostile for ten years. Defendants contend that the court erred in quieting title in plaintiff when they had established title in themselves by adverse possession. They further contend that facts were found by the trial court without support in the evidence.

■ Defendants, in their brief, urge that this court consider "de novo all of the facts in evidence". This we cannot do. Under Rule 73.01, V.A.M.R. our review in a court-tried case is to sustain the trial court's determination unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Defendants, claiming title by adverse possession, have the burden of proving each element necessary to establish title. *Johnson County Post No. 2513, VFW, Inc. v. Jackson*, 519 S.W.2d 335, 337 (Mo. App.1975). These elements are possession that is (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4)

exclusive, and (5) continuous, for ten years prior to commencement of the action. *Walker v. Walker,* 509 S.W.2d 102, 106 (Mo. 1974). The failure to prove any one of these elements prevents title being granted by adverse possession. *Teson v. Vasquez,* 561 S.W.2d 119, 125 (Mo.App.1977). Defendants have no deed or other color of title. If they had color of title less weight would be required to support their claim. *Teson v. Vasquez,* supra, 561 S.W.2d at 126; *Cash v. Gilbreath,* 507 S.W.2d 931, 935 (Mo. App.1974).

Defendants contend that because of the land being on their side of the fence, and their use of the premises, they have established title by adverse possession. Their use was pasturing cattle, clearing the premises, and putting picnic tables in the area.

■ The fact that a fence was established on plaintiff's property does not establish that defendants have any rights to the property in absence of an agreement that the fence was the boundary line. *Brown Paper Mill Co. v. Warnix,* 222 Ark. 417, 259 S.W.2d 495 (1953). Also see 11 C.J.S. Boundaries § 77, p. 650. There was no evidence of any agreement that the fence was the boundary line. The evidence showed that the fence was placed there for convenience in maintaining it. While the location of the fence may be a factor in determining the property line, it is not conclusive in the absence of other findings. See Annotation 170 A.L.R. 1144. The mere location of a fence does not establish the boundary line, since a fence may be placed for other purposes. *Cothran v. Burk,* 234 Ga. 460, 216 S.E.2d 319, 321 (1975).

■ Defendants offered evidence that they and their predecessors had used the property to pasture cattle. Pasturing of cattle has been held insufficient in itself to establish adverse use, but does tend to show claim of ownership. *Miller v. Warner,* 433 S.W.2d 259, 264 (Mo.1968).

■ Defendants cleared and improved the premises. If this was rough, wild land as defendants contend, their possession could not have started until it was cleared

and improved. *Dudeck v. Ellis,* 399 S.W.2d 80, 90 (Mo.1966). It could be reasonably inferred from plaintiff's testimony that the improvements were not started until after 1968 when she and her husband visited the premises. All other improvements in connection with the campground and picnic area, except for a portion of a road, were commenced well within ten years of the filing of the petition. A light pole was put on the property line four to five years before the trial, a boat ramp north of the disputed property six to eight years, and a sign advertising the resort in 1971. Plaintiff testified that she first knew that defendants were making a claim to the property in 1975. The trial court also found that at least a portion of the property had been used jointly by the parties. Plaintiff testified she had watered her horse there, and went to the area to pick greens, mushrooms and pawpaws.

■ Defendants' evidence as to use of the premises before 1975 was all given by defendants and their relatives. Even though some was undisputed, it was for the trier of fact to judge the credibility, and he may disbelieve the testimony even when uncontradicted. *Labor Discount Center, Inc. v. State Bank & Trust Co. of Wellston,* 526 S.W.2d 407, 420–421 (Mo.App.1975). The law and the evidence support his findings that the evidence did not show that the possession of defendants was exclusive and hostile for the required period of ten years. These are necessary elements to establish title by adverse possession.

The judgment is affirmed.

All concur.