Delores J. EDMONDS,
Plaintiff–Appellant,

and

Nicey Bridger, Plaintiff,

v.

Bill L. THURMAN and Sandra N. Thurman, Defendants–Respondents.

No. 16700.

Missouri Court of Appeals,
Southern District,
Division Two.

April 30, 1991.

Abe R. Paul, Rhoades, Paul and Paul, Pineville, for plaintiff-appellant.

John Sims, Ruyle & Sims, Neosho, for defendants-respondents.

HOGAN, Judge.

In this action to quiet title and for ejectment, plaintiffs Edmonds and Bridger sought an order vesting them with the title to a small tract of land and a further order declaring their right to possession of the land and to damages. The trial court rendered judgment adverse to plaintiffs, and plaintiff Delores J. Edmonds, to whom we shall refer as the plaintiff, appeals.

The realty involved is a small triangular tract which lies along the vertical quarter-section line between the southeast quarter (SE 1/4) of the northeast quarter (NE 1/4) and the southwest quarter (SW 1/4) of the northeast quarter (NE 1/4) of Section 15, Township 22 North, Range 31 West in McDonald County. The disputed tract lies just north of the horizontal half-section line which divides the north and south halves of Section 15. A creek, called Big Sugar Creek, runs generally from east to west across the south half of the northeast quarter of Section 15. The north boundary of the parcel in question is Big Sugar Creek. We have appended a diagram taken from one of the two principal surveys received in evidence. The diagram has no significance whatever except as it may be useful to an understanding of the opinion.

In 1957 plaintiff Delores Cook Edmonds and her former husband, who was deceased at trial time, purchased a 600–acre tract of land in Sections 14 and 15, Township 22 North, Range 31 West in McDonald County, Missouri. Eighty acres of this land, the east half (E 1/2) of the northeast quarter (NE 1/4) lies in Section 15. The particular tract with which we are concerned is the southeast quarter (SE 1/4) of the northeast quarter (NE 1/4) of Section 15. As we have said, Big Sugar Creek runs across this area. The stream was not particularly described by the witnesses, but some of the exhibits, particularly Defendants' Exhibits C and D, make it appear to be a typical Ozarks stream. At the place with which we are concerned—roughly the area enclosed in the circle on the diagram—there is a bluff on the south side and a gravel or sand bar on the north side of Big Sugar Creek. The particular subject of controversy, Straight Up or Stand Up Rock, is located near the south shore of Big Sugar Creek just west of the quarter-section line which marks the boundary between the southeast quarter (SE 1/4) and the southwest quarter (SW 1/4) of Section 15. It is to be borne in mind that the plaintiff admitted her deed conveyed no property west of the quarter-section line which divides the southeast quarter (SE 1/4) and the southwest quarter (SW 1/4) of Section 15. The plaintiff does not claim the triangular parcel of land at issue by devise or grant but solely by prescription. She admits she has no color of title to Straight Up Rock.

The plaintiff testified that she and her late husband farmed the 600–acre tract from 1950 up to the time of her husband's death in 1980. There was one mile of what the plaintiff called "river frontage" on her property, and from time to time after she and her husband acquired title to their farm in 1957 they sold tracts of land along the creek for cabin sites or as "second home" sites. One of the "landmarks" on the creek is Straight Up Rock.

The plaintiff's title to Straight Up Rock apparently came in question when she decided to sell plaintiff Bridger a 55–acre tract which included the disputed tract and that part of Big Sugar Creek which surrounds Straight Up Rock. As we read the record, this controversy developed after it became apparent that plaintiff Edmonds had no record title to the land we have referred to as the disputed tract.

The trial court heard evidence in this cause and both the plaintiffs and defendants requested findings of fact and con-

clusions of law. The plaintiff filed a general request for findings. Noting that Rule 73.01(a)(2) requires a party requesting findings in a court-tried case to specify the controverted issues upon which findings are sought, *Dardick v. Dardick*, 670 S.W.2d 865, 867[1] (Mo. banc 1984), the trial court quite correctly concluded that plaintiffs' general request imposed no duty upon it to make any findings. The court did make findings as requested by the defendants. Those findings have been useful, although we shall not set them forth at length. The trial court found, essentially, that the plaintiffs had no interest in the disputed tract of land and entered judgment in favor of the defendants and against the plaintiffs on all counts of the plaintiffs' petition.

■ Plaintiff's first point, considerably paraphrased, is that she established title to the disputed tract by clear and convincing evidence. We cannot agree. A plaintiff claiming the title to land by adverse possession has the burden to prove actual, hostile, i.e., under a claim of right, open and notorious, exclusive and continuous possession of the property for ten years prior to the commencement of the action. Failure to prove any one of these elements defeats the plaintiff's claim of title by adverse possession. *Dambach v. James*, 587 S.W.2d 640, 642–43[2, 3] (Mo. App.1979); *Teson v. Vasquez*, 561 S.W.2d 119, 125[1, 2] (Mo.App.1977). As we read the trial court's findings, it based its judgment on a want of proof that plaintiff Edmonds and her deceased husband had ever taken actual possession of the disputed tract. In *Teson*, 561 S.W.2d at 126, the "actual possession" which is an element of adverse possession was explained thus:

"[6–8] The first element is actual possession. Two concepts are relevant in determining whether a claimant has established his actual possession of the land claimed. They are his present ability to control the land *and his intent to exclude others from such control.* ... Where the claimant occupies land without color of title, in order to prevail, he

must show physical possession of the entire area claimed.... A mere mental enclosure of land does not constitute the requisite actual possession.... Rather, there must be continual acts of occupying, clearing, cultivating, pasturing, erecting fences or other improvements and paying taxes on the land. The performance of all or any combination of these acts of occupancy serves as evidence of actual possession but is not conclusive.... Each case must be decided on its own peculiar facts." (Citations omitted. Emphasis ours.)

Conspicuously absent in this case is plaintiff Edmonds' intent to exclude others from control of the disputed tract of land. There was undisputed evidence that for many years the area around Straight Up Rock had been open to the public for use as a "swimming hole." Plaintiff Edmonds did testify that during the latter part of her occupancy of the land adjacent to the disputed tract she had attempted to control some unlawful activity near the swimming hole, but she did not indicate any objection to lawful use of the area around Straight Up Rock as a place to swim. The trial court found and the record indicates that area residents hunted and fished on the disputed tract and the adjacent land without objection on the part of any landowners in the area. There is no substantial evidence of any intent on the part of the plaintiff to exclude others from control of the area.

■ Other acts tending to establish actual possession of a tract of land are: a) fencing; b) use of the land as pasture; and c) paying taxes on the property. *Boeckmann v. Fitzpatrick*, 491 S.W.2d 524, 527 (Mo.1973); T. Hellmuth, *Missouri Practice, Real Estate Law* § 63, p. 102 (1985). Of course, and despite the plaintiff's argument in her second point to the contrary, the disputed tract of land is, as the numerous photographs show, wild and undeveloped land. The intent to take actual possession of such land requires less actual exercise of ownership by affirmative act than is required when the land is suitable for cultivation. 3 *American Law of Property* § 15.3,

pp. 766–67 (1952). Even so, occasional possessory acts, such as occasional use of the land for pasture or gathering up firewood, or similar isolated acts, amount to nothing more than occasional trespasses which do not establish adverse possession. *Huston v. Graves*, 213 S.W. 77, 79 (Mo.1919); *Barley v. Fisher*, 267 Mich. 450, 255 N.W. 223, 224 (1934). Making allowance for the nature of the land in question, the only act performed by plaintiff Edmonds during the time she and her deceased husband owned and occupied the land adjacent to the disputed tract is the plaintiff's maintenance of the fence marked the "old fence." The trial court found that the "old fence" was constructed by one of the defendants' predecessors in title, and this finding is borne out by the record. It was stipulated that the defendants and their predecessors in title paid the real property taxes on the southwest quarter of the northeast quarter of Section 15—where Straight Up Rock is located—at least since 1962.

The opinion could be considerably lengthened by a more complete discussion of the sufficiency of the evidence to support the judgment of the trial court. Such discussion would serve no useful purpose. Plaintiffs, who claimed title to the disputed tract by adverse possession and admittedly had no deed or other color of title, had the burden to prove each element necessary to establish title by adverse possession. *Dambach v. James*, 587 S.W.2d at 642. Plaintiffs failed to establish that they had taken actual possession of the disputed tract. Accordingly, the judgment is in all respects affirmed.

PARRISH, P.J., and SHRUM, J., concurs.

APPENDIX