Charles N. CUNNINGHAM, Respondent,

v.

Morgan G. HUGHES, Appellant.

No. WD 49047.

Missouri Court of Appeals,
Western District.

Oct. 11, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 29, 1994.

Application to Transfer Denied
Jan. 24, 1995.

James J. Wheeler, Keytesville, for appellant.

Lester E. Adams, Browning, for respondent.

Before ELLIS, P.J., and BERREY and SMART, JJ.

ELLIS, Presiding Judge.

On February 3, 1992, Charles W. Cunningham filed a three count petition against Morgan G. Hughes in Macon County Circuit Court. In Count I, he asked the court to find and declare title to certain real estate situated in Macon County. Count II alleged trespass and Count III sought damages for trespass. In due course, Hughes filed an answer and a counterclaim in which he asked the court to quiet and determine title to the 18 acre tract which was the subject of Cunningham's petition. He asserted he had acquired title to the property by adverse possession.

The real estate in question consists of approximately 18 acres, is situated in northern Macon County and forms a strip that lies north of east-west Macon County Road 416 and south of the Macon–Adair County line. In 1989, Cunningham purchased 291 acres of

real estate from Donald Wolf, the legal description of which, and the deed for, includes the 18 acres. Macon County Road 416 runs across Cunningham's 291 acre tract, with the 18 acre parcel thus separated from the main body of the 291 acres by Road 416. Hughes, on the other hand, owns 225 acres in Adair County, which is contiguous with the 18 acres on the north side, but the deed for which does not include the 18 acres. Both the Cunningham and Hughes properties were owned by a single owner, Albert Wolf,[1] at one time. Hughes had rented the 225 acres he now owns from Albert Wolf from 1965 until 1968 or 1969, when he purchased the land. When he leased the property, and from the time he purchased it until shortly before this action was commenced, the 225 acres and the 18 acres in dispute were enclosed by a single fence.

The parties agree that the strip is wild brushy land and is of little use except for hunting. The barbed-wire and post fence which enclosed Hughes' 225 acres and the 18 acres in dispute ran along the north side of Road 416. It was in existence in 1989 when Cunningham purchased his 291 acres, but was removed in about 1990. In January, 1992, Hughes erected a single-wire electric fence a few feet north of Road 416, thereby asserting title to the strip. This fencing triggered the filing of Cunningham's petition.

Trial was to the court sitting without a jury. The trial court entered written Finding of Facts and Conclusions of Law. It found that Hughes had failed to prove that Cunningham, the record title holder, and his predecessors in title, had not been in possession of the property for more than ten years prior to the filing of the case. The court cited Cunningham's recorded title, payment of taxes and allowing people to hunt and remove timber from the property as evidence of Cunningham's possession of the property. Furthermore, the court found that Hughes had failed to prove title by adverse possession because Hughes' use of the land was not exclusive in light of the finding that Cunningham had shown he was in possession, at least

to some extent, in the previous years. The court awarded Cunningham declaratory judgment on his title and an injunction against Hughes. It also awarded Cunningham nominal damages. Hughes appeals this decision.

Appellate review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court will be affirmed by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.*

Hughes presents two points on appeal. He claims that the trial court erroneously stated and applied the law in finding that Cunningham and his predecessors were in possession of the parcel within ten years of commencement of the action. He also claims the trial court's finding that Cunningham was the owner of the parcel has no substantial evidence to support it and that it is against the weight of the evidence.

"[T]he record title to wild and vacant land raises the presumption that the possession is in the record owner." *Brannock v. McHenry*, 252 Mo. 1, 158 S.W. 385, 387 (1913) (citation omitted). *See also Fiorella v. Jones*, 259 S.W. 782, 785 (Mo.1923) (citations omitted) ("Inasmuch as the record title, as a matter of law, was in the plaintiff, and defendant claimed title only by virtue of adverse possession, the burden of proof was properly put upon the defendant to show that he, and those claiming under him, had knowingly held adverse possession of such property for ten years before the suit was commenced."). Since Cunningham is the undisputed record title holder to the strip of land, the burden was on Hughes to prove his counterclaim that he had acquired title by adverse possession.

"To acquire title by adverse possession under § 516.010, RSMo 1986, the party claiming through this principle must prove the concurrent existence of five elements. The possession must be (1) hostile, that is,

---

1. Donald Wolf, the person from whom Cunningham purchased his property, is apparently a successor to Albert Wolf.

under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for ten years prior to commencement of the action to perfect title by adverse possession." *A. Charles Bussen Trust v. Kertz,* 723 S.W.2d 922, 927 (Mo.App.1987) (citations omitted); § 516.010, RSMo 1986.[2] Failure to prove even one element defeats the claim. *Witt v. Miller,* 845 S.W.2d 665, 667 (Mo.App. 1993).

■ Hughes presented evidence regarding his own acts of possession, including allowing his cattle to graze on the strip, repairing a fence constructed by a predecessor, and giving permission to others to hunt and cut wood on the property. He argues that this evidence was sufficient to establish his title by adverse possession. However, the nature of the property determines the kinds of acts which constitute possession. In *Edmonds v. Thurman,* 808 S.W.2d 408 (Mo.App.1991), the real estate in dispute was "wild and undeveloped land." The court in that case said:

> The intent to take actual possession of such land requires less actual exercise of ownership by affirmative act than is required when the land is suitable for cultivation. Even so, occasional possessory acts, such as occasional use of the land for pasture or gathering up firewood or similar isolated acts, amount to nothing more than occasional trespasses which do not establish adverse possession.

*Id.* at 410–11 (citations omitted). Furthermore, in *Edmonds,* the court found that maintenance by the party claiming adverse possession of an "old fence" constructed by a predecessor in title was not enough to establish adverse possession. *Id.* at 411. In addition, the Missouri Supreme Court held in *Miller v. Warner,* 433 S.W.2d 259, 265 (Mo. 1968), that while tending to show a claim of ownership, "pasturing of cattle or cutting

timber do not in themselves establish adverse possession."[3]

■ Furthermore, Hughes' argument misses the mark because, even if his acts of possession were enough to establish title by adverse possession, he must prove his possession was *exclusive.* This necessarily involves a showing that he "entirely excluded" the record owner. *Fiorella v. Jones,* 259 S.W. at 785.

> The rightful owner cannot be deprived of his title by the possession of another, although such other person clams [sic] to own it, if the rightful owner is also in possession during the same time the adverse claimant is in possession. Any sort of joint possession with the owner is not sufficient to support title by adverse possession. The owner must be wholly excluded from possession by such claimant for the stated period.

*Id.* (citation omitted); *see also Lohrmann v. Carter,* 657 S.W.2d 372, 377 (Mo.App.1983).

Cunningham presented evidence that within the last ten years (as well as the years previous to that), he and his predecessors not only had record title to the disputed parcel, but that they also paid the property taxes on it and gave permission for others to hunt and remove timber from the parcel. In its Finding of Facts and Conclusions of Law, the trial court expressly found that the evidence presented by Cunningham regarding his possession was enough to establish Cunningham had been in possession of the parcel within the previous ten years. The court further found that in light of this, Hughes failed to prove he had exclusive possession and therefore failed to establish adverse possession.

Hughes argues that the trial court erroneously stated and applied the law in finding that Cunningham or his predecessors were in possession of the parcel within ten years of

---

2. Section 516.010, RSMo1986, states:
   No action for the recovery of any lands ... or for the recovery of the possession thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

3. The court in that case held that the circumstances in that case did support a finding of adverse possession. However, that case is distinguishable because there was more evidence to support a claim of adverse possession, including farming and selling hay, collection of rents for pasturage, and clearing the area by the adverse possessor.

commencement of the action. He points to the trial court's statement in its Finding of Facts and Conclusions of Law:

> For the defendant to prevail he must prove that neither plaintiff nor his predecessors was in possession for more than ten (10) years prior to the filing of the case. He cannot do so. The Plaintiff and his predecessors had record title, paid the taxes, Donald Wolfe's [sic] son hunted on the property and Donald Wolfe [sic] had timber harvested from the land and Plaintiff himself was on the land to inspect it prior to taking the deed.

He asserts that Cunningham's "record title is not possession" and that "[p]ayment of taxes may be evidence of a claim to ownership, but it is not an action of possession." He further states that there was little, if any, competent evidence regarding Donald Wolf's son hunting on the property or of Donald Wolf selling timber off the property.

Hughes' contention is without merit. The trial court correctly declared that the burden was on Hughes to prove all elements necessary to establish his claim of adverse possession, which necessarily includes proof of exclusive possession. In addition, there was sufficient evidence in the record upon which the court could make the factual determinations about which Hughes complains.

Hughes claims, though, that his adverse possession began in 1969 when his deed was recorded, and therefore, he had established title by adverse possession in 1979. Thus, he claims, any acts taken by Cunningham in the years after 1979 would have to be sufficient to *interrupt* adverse possession, and the evidence Cunningham presented regarding the taxes, hunters and timbercutting were merely "occasional trespasses" and were not enough to interrupt his title obtained through adverse possession. While it is true that the ten consecutive years establishing adverse possession need not be the ten years immediately preceding the suit for title, *Witt v. Miller*, 845 S.W.2d at 668, Hughes still had to establish he met all five elements of adverse possession for ten consecutive years at some time. Again, Cunningham and his predecessors (the Wolfs) had record title, paid the taxes, and demonstrated other various acts of possession at all times relevant here. And, as we have already discussed, in light of the nature of the property, the actions of Cunningham and his predecessors were enough to prevent a claim to title by adverse possession.[4]

Hughes bore the burden of proving the elements of adverse possession, including exclusivity. Both sides presented evidence regarding their own acts of possession of the disputed strip. In a court-tried case, the credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe all, part, or none of the testimony of any witness. *In re Marriage of Felkner*, 847 S.W.2d 144, 147 (Mo.App.1993). We give deference to the trial court "even if the evidence could support a different conclusion." *Lisec v. Coy*, 793 S.W.2d 173, 176 (Mo.App.1990). Consequently, since there was evidence in the record supporting the trial court's finding that Cunningham was, at least to some extent, in possession of the property, we must defer to the trial court's determination that Hughes failed to prove exclusive possession and therefore was not entitled to a declaration that he had acquired title by adverse possession.

After reviewing the record, we cannot say that the trial court's decision is against the weight of the evidence, or that it is not supported by substantial evidence. Therefore, the judgment is affirmed.

All concur.

---

4. In holding that the record title holder should prevail, the court in *Edmonds* noted that the record title holder had paid the property taxes on the property since 1962. *Edmonds*, 808 S.W.2d at 411.