Marlene SHOEMAKER and Sandra
E.F. Cover, Respondents,

v.

Penny HOUCHEN and David
Owen, Appellants.

No. WD 55409.

Missouri Court of Appeals,
Western District.

May 11, 1999.

Robert L. Cox, Clinton, respondents.

Dennis Owens, Kansas City, for appellants.

Before: Presiding Judge HAROLD LOWENSTEIN, Chief Judge BRECKENRIDGE, and Judge PAUL SPINDEN.

LOWENSTEIN, Judge.

The trial judge entered judgment quieting title in plaintiffs Marlene Shoemaker and Sandra Cover, to a strip of land between plaintiffs' and defendants' property, upon which a tree line sits. The judge also awarded damages for trees that had already been removed from this tree line by defendants. Defendants Penny Houchen and David Owen appeal that decision.

## I.

The facts favorable to the result are set out, along with a very rough sketch of the area in dispute. (See Diagram). Defendant Houchen owns a tract of land consisting of approximately twenty-one acres. Plaintiffs Shoemaker and Cover own tracts to the south of Houchen's tract. The strip of land in dispute concerns a tree line, which runs along the south edge of Houchen's property and the north edge of the Plaintiffs' property. The issue in this case is the location of the boundary line between the Houchen tract and the land owned by Plaintiffs. The tree line is of varying widths and the parties dispute the location of the boundary line in relation to this tree line. Houchen, through her agent, defendant David Owen, cut trees from the tree line, which Houchen claims was part of her property. As a result of the removal of the trees, Plaintiffs brought this action. Plaintiffs contend that their north property line runs along the northern-most line of the tree line, which is evidenced by a barbed wire fence. Houchen contends that her land extends into the tree line, and that she therefore has the right to take out the trees, including the trees already taken out.

This property dispute is unusual in that the Defendants were ordered to pay Plaintiffs over $10,000 in damages. The court ordered Defendants to pay $3,000 for ten trees removed from what the court determined to be Cover's property, then trebled these damages pursuant to Section 537.340, RSMo 1994. In addition, the court ordered Houchen to pay $1,000 in damages to each of the Plaintiffs for unlawful withholding of possession of the property.

According to trial testimony, the Houchen property was previously owned by Mitchell Rogers who bought the property from the estate of Mr. York. The tract of land Rogers conveyed to Hubbard, the landowner prior to Houchen, extended south to a barbed wire fence, which ran from a square corner post on the northeast corner of the tree line, and ran along the north edge of the tree line. Rogers testified that when he bought the property, it was described to him as being bounded on the south by the fence and the corner post; he, therefore, never crossed south of the fence, and never considered it to be his property. Prior to conveying the tract of land to Hubbard, Rogers had a new survey done which reflected the fence line as the boundary line. There was also testimony that, due to the new survey, this conveyance left a wedge-shaped tract, retained by Rogers, which lies between the Houchen property and that of the Plaintiffs. This wedge shaped tract, which includes the area in dispute, is about eight feet wide at its widest point on the west side, and narrows at the east end.

Plaintiffs Cover and Shoemaker own the land south of Houchen, with Shoemaker's land west of Cover's. They bought their land from Foster, who owned the entire southern tract the previous 32 years. When Foster first moved to the property in 1964, York was the owner of the property to the north. At that time, the barbed wire fence existed which ran along the north edge of the tree line, from the square post on the west end and at the other end is nailed to one of the hedge trees. Foster testified that at one time York had cattle on his land and put in a fence which connected to the hedgerow at the east end of the barbed wire fence, extending it westward; this fence was later removed. There was further testimony that, even when the fence was removed, owners on both sides continued to mow up to that point. Plaintiffs contend that this evidence shows that as far back as 1964, the owners on each side of the barbed wire fence considered it to be their boundary line, and only used the land on their respective sides. Besides the barbed wire fence on the north of the hedgerow, is a woven wire, or hog-wire, fence on the south side of the hedgerow, which has fallen in some sections, but is still visible in others.

Up until the time the trees were removed by defendants, no party has maintained, or otherwise exercised control of the hedgerow. At one time, York wished to remove the hedgerow and put up a fence. He asked Foster if she would contribute to the cost, but she was unable to. Foster further testified, over a hearsay objection, that York was asking her permission to remove the hedgerow. There was also testimony that after moving onto the property in 1992, Cover built a woodrail fence which separated her property from Shoemaker's, and extended north through the hedgerow, ending on the north side. She also placed a shed close to the trees and put in a horse pen, which extended into the tree line, in a corner of her property.

Plaintiffs pleaded and submitted their case based on adverse possession. The court, however, awarded title to the Plaintiffs based on its finding that the boundary line was established by the legal doctrine of acquiescence. The trial court in this case, based its decision on a finding that "the boundary line was established by acquiescence of the owners of the two tracts at least as early as 1962, and probably many years earlier," and that "it is clear from the testimony that the fence line that did exist at one time still exists to a great extent, . . . and for many years was treated by the previous owners of the Houchen property as it's south boundary." The trial court also ordered that a new survey be done to show the boundary line as per court instruction. This line is, at some points, further north than the barbed wire fence, although the Plaintiffs claim only that the fence was their northern boundary.

■ "The standard of review for court-tried quiet title actions is the same as in other court tried cases. . . ." *Evans v. Wittorff*, 869 S.W.2d 872, 875 (Mo.App.1994). The judgment must be affirmed if it is supported by substantial evidence, is not against the weight of the evidence and the trial court did not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The Defendants raise several points on appeal. First, they contend that the trial court was in error because there was insufficient evidence of adverse possession, and the trial court's application of the doctrine of acquiescence was in error because it was never pled, and because there was insufficient evidence that acquiescence ever occurred. The remaining points concern the wording of a permanent injunction, and the amount of damages awarded.

## II.

■ Acquiescence and adverse possession are separate, "distinct" legal doctrines. 11 C.J.S., Boundaries, Section 83. To understand the underlying points, it is important to understand the elements of each of these doctrines, and how they can work together. In *Tillman v. Hutcherson et al.*, 348 Mo. 473, 154 S.W.2d 104, 107 (1941), the Court held that a "claim of title by virtue of an agreed line is one thing, and the claim by adverse possession is another." See also *Conduff v. Stone*, 968 S.W.2d 200, 204 (Mo.App.1998).

■ In order to acquire title by adverse possession under Section 516.010, RSMo 1994, the claiming party has the burden of proving that it possessed the land, and that the possession was (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for 10 years prior to commencement of her action to perfect title by adverse possession. *Cunningham v. Hughes*, 889 S.W.2d 864, 866–67 (Mo. App. W.D.1994); see also *Lohrmann v. Carter*, 657 S.W.2d 372, 377 (Mo.App. 1983); *Conduff*, 968 S.W.2d at 203. The burden of proving each element by a preponderance of the evidence is on the plaintiff, and failure to prove even one element defeats the claim. *Brinner v. Huckaba*, 957 S.W.2d 491, 494 (Mo.App.1997).

■ The law "presumes that every possession is rightful, and consistent with,

not in opposition or 'adverse' to, title and ownership." *Miller v. Warner*, 433 S.W.2d 259, 262 (Mo.1968). Therefore, a party "who relies upon 'adverse possession,' in order to rebut this presumption of possession consistent with the title of the real owner, must prove his possession to be 'adverse' to the title set up . . .; that is, he must show the actual knowledge of the real owner that" his possession is in "defiance of [the true owner's] title," meaning his possession is such that he is attempting to take the land as his own. *Id.* at 262–63. Or, he must show that his occupancy and use, was "so open and notorious and inconsistent with, as well as injurious to, the rights of the true owner, that the law will authorize, from such facts, the presumption of such knowledge by the true owner." *Id.* To put it another way, when relying on adverse possession, which is a taking title of the property of another through possession, the party is required to show that the real owner had knowledge, actual or presumed, that the party intended to take possession and title, requiring the true owner to assert his rights. Failure to assert his rights for the statutorily prescribed period can result in the loss of title.

■■■■■ "The doctrine of boundary by acquiescence is somewhat murky . . .," and is seldom relied on. *Conduff*, 968 S.W.2d at 204. Unlike adverse possession, which establishes *title*, acquiescence establishes a *boundary*. An agreement as to a boundary line, "may be proved by an express agreement, or by acquiescence in a fence as a boundary for a period of time sufficient to evidence a mutual acceptance of the dividing line as the common boundary by the adjoining owners." *Id.* "[P]ossession by a non-title holder does not become adverse, for purposes of proving adverse possession, until an agreement is demonstrated by one of these methods." *Id.* Meaning, although acquiescence and adverse possession are separate legal doctrines, once an express agreement or acquiescence has been proved, possession

thereafter becomes adverse, and the 10–year period for adverse possession begins to run. See *Conduff*, 968 S.W.2d at 204. For example, if two adjoining landowners dispute whether a creek, or in this case, a fence, is the boundary line, and continue to occupy and use their land up to that demarcation, once a sufficient time has elapsed to satisfy the requirements of acquiescence, the fence or creek is now considered to be the boundary. Thereafter, possession is considered adverse, and if the possession continues for 10–years, the possessor could acquire title by adverse possession.

■■■■■ Direct evidence is not required to show an agreement fixing a boundary line, such an agreement "may be inferred from the acts, conduct, and . . . from the long acquiescence of the parties." *Tillman*, 154 S.W.2d at 106–07. When abutting landowners use and occupy "up to a common boundary for a long time without disturbance, . . .'[s]uch possession and use are evidence that there was an agreement to establish the line,—not only to corroborate other evidence of such an agreement, but even if there be no other such evidence'." While no duration is prescribed, the law does require that the duration of acquiescence be sufficient to show the mutual acceptance of the dividing line as the mutual boundary. *Id.* at 107; *Conduff*, 968 S.W.2d at 204. Respondents cite the *Tillman* case as authority for their position that, regardless of the absence of evidence of an agreement to establish the fence as the boundary, possession and use up to the common boundary for a long time is, in itself, evidence that there was such an agreement. However, in the case at bar, it was stated a number of times that no one used the land upon which the hedgerow sits. The evidence demonstrated that there was a lot of growth under the trees, which nobody had maintained. Evidence further showed that Shoemaker built a woodrail fence running along the west edge of her property, extending through the hedgerow, connecting to the

barbed wire fence on the north side of the hedgerow. However, that fence was built too recently to satisfy the requirements here. Because the Plaintiffs did not use or occupy the property that lies between the south side of the hedgerow and the barbed wire fence on the north side, *Tillman* does not carry the day for Plaintiffs. The existence of the fence, in the absence of occupation and use up to the fence, is not enough to evidence an agreement between the parties.

The doctrine of acquiescence applies only to "uncertain or disputed boundaries, as opposed to cases where the location of the true boundary is known." *Conduff*, 968 S.W.2d at 205. A boundary line "may not be established by acquiescence unless there is some contention between the landowners over the location of the line as a result of which a boundary is established in which the landowners subsequently acquiesce." *Aley v. Hacienda Farms, Inc.*, 584 S.W.2d 126, 128 (Mo.App. 1979); see also *Conduff*, 968 S.W.2d at 205. Although "[a]djoining landowners might go on for years without knowing the exact location of their dividing line, ... unless and until there is a dispute there would be no reason for establishing a line by acquiescence (or agreement)," *Aley*, 584 S.W.2d at 128–9. Further, because a fence may be placed as a mere barrier or for convenience, rather than as a boundary, "[f]ailure to dispute the location of a fence is not necessarily acquiescence in a boundary." *Id;* see also *Conduff*, 968 S.W.2d at 204. In *Aley*, the court found that the "failure of plaintiff's evidence lies in the fact that it wholly lacked proof of the fence ever having been mutually agreed to, recognized or acquiesced in as a boundary...." 584 S.W.2d at 128.

### III.

Houchen contends that the trial court's judgment, based on the doctrine of acquiescence, is in error because the theory was neither pled nor tried by implied consent. Appellant further contends that there was insufficient evidence to support a finding based on acquiescence. Respondents argue that Appellants waived any objection to the doctrine of acquiescence, as being beyond the scope of the pleadings, by failing to object when evidence of such was introduced.

"To the extent a judgment goes beyond the issues presented and raised by the pleadings, it is void." *Conduff*, 968 S.W.2d at 205. However, Supreme Court Rule 55.33(b) allows for an amendment to the pleadings in some cases. "Rule 55.33(b) ... provides that '[w]hen issues not raised by the parties are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings'." *Id.* The implied consent rule applies only when the presented evidence applies solely to a new issue and is not relevant to issues already present in the case. *Thompson v. Thompson*, 835 S.W.2d 570, 573 (Mo.App. 1992); see also *Conduff*, 968 S.W.2d at 205. In summary, if evidence applying to a new issue is admitted, without a timely and specific objection, and the evidence is not relevant to issues already present, Rule 55.33(b) treats the new issue as having been raised in the pleadings.

In the case at bar, when the issue of acquiescence was raised through evidence and through statements by Plaintiff's counsel, Houchen objected on the basis of relevancy. There are cases from other districts which suggest that an objection as to *relevancy* is inadequate to assert on the ground that evidence was outside the scope of the pleadings. *Landvatter Ready Mix, Inc., v. Buckey*, 963 S.W.2d 298, 304 (Mo.App. E.D.1997); *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 339 (Mo.App. S.D. 1991). However, due to the unusual facts of this case, this court does not find here that acquiescence was tried by implied consent. When evidence of acquiescence was presented, defense counsel repeatedly objected to such evidence as being irrele-

vant. While his objections could have been more specific, it cannot be said that the evidence was introduced without objection. In this case, plaintiff countered defense counsel's objections by arguing that the doctrine of acquiescence was a means of proving adverse possession. While this interpretation of the law was in error, for the reasons set out above, the trial judge overruled defense counsel's objections, and ultimately based his ruling on acquiescence.

Respondents contend that an agreed boundary is a basis for the establishment of title by adverse possession, stating in their brief, that "the evidence of acquiescence was only offered to prove up adverse possession, not to establish some other issue. . . ." Respondents try to categorize acquiescence as an *element* of adverse possession; it is their contention that acquiescence is a means of proving adverse possession. They argue that *Tillman* establishes that "acquiescence can also establish commencement of circumstances ripening into title by adverse possession." However, as explained above, acquiescence and adverse possession are separate legal theories, each with its own elements. If Respondents assertion were true, that acquiescence is a means of proving adverse possession, such that acquiescence need not be pled, then the implied consent rule would not apply.

The evidence presented, to prove doctrine of boundary by acquiescence, went to a new issue, which was timely objected to. It would be unfair to allow Plaintiffs in this case to plead the elements of adverse possession, then base their case on acquiescence. There was no hint of Plaintiff's plan to introduce evidence of acquiescence until during trial, leaving defense counsel unprepared to properly defend. The doctrine of acquiescence has not been a frequently used doctrine, and it is understandable that defense counsel would not be familiar enough with it that he would be able to make specific, informed objections to plaintiff's evidence and arguments con-

cerning the doctrine. The evidence of acquiescence, which was a new issue, was not admitted without objection, and as such, on the facts of this case, was not tried by implied consent.

In any event, had the issue of acquiescence been tried by implied consent, there was insufficient evidence on the record to support the theory. The court in *Conduff v. Stone,* addressed the same issues as those in the case at bar. 968 S.W.2d 200 (Mo.App.1998). In *Conduff,* the Plaintiffs brought suit to quiet title in a strip of land that separated their property from Defendant's. In that case, as in this case, an old fence existed which ran roughly parallel to, but not on, the recorded boundary line. Plaintiffs plead that the disputed tract was theirs by adverse possession, and the trial court held for the plaintiffs, basing its decision on the doctrine of boundary by acquiescence. In *Conduff,* the trial court held that "the 'old fence' line was established as a boundary line between the two properties by long acquiescence which created a presumption that it was the true line, and further, that the 'old fence' line was the agreed boundary line. . . and that the possession and use on each side of the fence line continued long enough to indicate that it was the understanding of adjoining owners that the 'old fence' was the true boundary line. . . ." *Id.* at 203–04. The appellate court reversed, based on its holding that plaintiffs failed to establish adverse possession for 10 consecutive years, and boundary by acquiescence was neither pled nor tried by implied consent. *Conduff* is relevant to the case at bar because it states the requirements for proving boundary by acquiescence. The doctrine of boundary by acquiescence is "applicable only to *uncertain* or *disputed* boundaries. . . ." *Id.* at 205; see also *Gillenwaters Building Co. v. Lipscomb,* 482 S.W.2d 409, 412 (Mo.1972). Years may pass without neighboring landowners' "knowing the exact location of their dividing line, and unless or until a dispute arises, there would be no reason to

establish a boundary by acquiescence." *Id.* In the case at bar, the first dispute as to the actual boundary came when Defendant cut the trees. Further, the failure to dispute the location of a fence is not necessarily acquiescence in the fence as a boundary "because a fence may be placed for purposes other than fixing it as a boundary." *Id.*

The court in *Aley v. Hacienda Farms, Inc.,* 584 S.W.2d 126, 128 (Mo.App.1979), also stated that when adjoining landowners "occupy their respective properties up to a certain line which they mutually recognize and acquiesce in for a long period of time, they may be precluded from claiming that the acquiesced in line is not the true boundary line." As in *Conduff,* the court also stated that to establish a boundary by acquiescence, there must be "proof of mutual conduct or acts" recognizing a fence or other marking as an agreed boundary, and that "the mere acquiescence in the existence of a fence as a barrier, for convenience or for any reason other than a boundary will not amount to an agreement as to a boundary or establish it as a true line." *Aley,* 584 S.W.2d 126, 128. The *Aley* court also held that the plaintiff's evidence failed because it lacked proof that the fence had ever been "mutually agreed to, recognized or acquiesced in as a *boundary ....*" *Id.* (emphasis added). The court also found that there was no evidence of some contention or dispute over the location of the boundary line, which would cause them to acquiesce, and failure to dispute the location of a fence is not, without some previous dispute, proof of acquiescence. *Id.* at 128–29.

■ As indicated earlier, the trial court based its judgment on acquiescence. This court finds that to the extent that the judgment was based on acquiescence, it was void because it was neither pled nor tried by implied consent. However, this is not the whole of the matter. Plaintiffs did plead and submit their case based on adverse possession, and Appellants contend there was insufficient evidence to support such a claim. "A correct decision will not be disturbed merely because the trial court gave a wrong or insufficient reason." *Evans v. Wittorff,* 869 S.W.2d 872, 875 (Mo. App.1994). The adverse possession claim must therefore be addressed.

## IV.

As was stated, to acquire title by adverse possession, the party making the claim has the burden of showing 10 years of actual, open, notorious, hostile, exclusive and continuous adverse possession. *Evans,* 869 S.W.2d at 874; *Machholz–Parks v. Suddath,* 884 S.W.2d 705, 708 (Mo.App. 1994); *Cunningham,* 889 S.W.2d at 866–67; *Lohrmann,* 657 S.W.2d at 377; *Conduff,* 968 S.W.2d at 203. If the Plaintiff fails to prove, by preponderance of the evidence, even one of the elements, the claim fails. *Machholz–Parks,* 884 S.W.2d at 708; *Brinner,* 957 S.W.2d at 494.

If there had been sufficient evidence to prove that there had been some boundary dispute and a subsequent acquiescence to the fence as the boundary, or if Plaintiffs had used and occupied the land up to the fence, without disturbance and for a long period of time, the fence would be considered the boundary. *Conduff,* 968 S.W.2d at 204; *Tillman,* 154 S.W.2d at 106–07. Once a fence is proved by either method to be the boundary possession thereafter would be considered adverse. *Conduff,* 968 S.W.2d at 204. However, because the evidence in this case does not support either finding, to sustain the judgment, there must be sufficient evidence to support the elements of adverse possession. The only facts, viewed in the light most favorable to the result, which would support such a finding, are the testimony that York had asked permission of Foster to replace the hedgerow with a fence and testimony that previous owners of the

Houchen tract believed their south boundary ended at the barbed wire fence.

■■■■ Actual possession "is determined by the nature and location of the property and the uses to which it can be applied." *Witt v. Miller* 845 S.W.2d 665, 668 (Mo.App.1993). Possession satisfies the "Open and Notorious" element, when "visible acts of ownership [are] exercised over the premises." *Id.* Examples of visible acts of ownership include maintaining and improving the property. *Kitterman v. Simrall,* 924 S.W.2d 872, 876 (Mo.App. 1996). In fact, actual possession, and the "intent with which dominion over land is exercised, may be shown by an almost endless combination of circumstances." *Miller v. Warner,* 433 S.W.2d 259, 263 (Mo.1968). However, in the case at bar, the record was completely devoid of any evidence that Plaintiffs or their predecessors in title had occupied, used, or otherwise exercised control over the hedgerow or even to the north of the tree line. In the absence of any such evidence of actual, open, and notorious possession, their adverse possession claim fails.

V.

Plaintiffs bore the burden of proving their claim of adverse possession. Acquiescence was neither pled nor tried by implied consent and the evidence was insufficient to support a finding of acquiescence or adverse possession. Accordingly, the judgment must be reversed, and the award of damages for tree removal and trespass must also be reversed. This is a strange set of facts, and this court is aware that by its holding, the boundary in question remains undecided. Establishing a boundary line between these parties is beyond the remedies available to the parties by this court. This judgment goes no further than to hold that the judgment relates to and is decided only on these points of law, by these Plaintiffs against these Defendants.

Judgment is reversed.

All concur.