George E. MURPHY, et al., Appellants,

v.

Glenda A. HOLMAN, Respondent.

No. WD 69340.

Missouri Court of Appeals,
Western District.

June 9, 2009.

George S. Smith, Columbia, MO, for appellant.

J.D. Gorman, Richmond, MO, for respondent.

Before Division Two: JOSEPH P. DANDURAND,[1] Presiding Judge, HAROLD L. LOWENSTEIN and JAMES M. SMART, Judges.

HAROLD L. LOWENSTEIN, Judge.

### I. INTRODUCTION

George Murphy ("Murphy") appeals from the judgment of the trial court in favor of Glenda Holman ("Holman") in her action to quiet title over a disputed parcel of land. The trial judge found that Holman acquired title to the disputed parcel by adverse possession and awarded her damages for Murphy's trespass upon the land.

---

1. Judge Dandurand was a member of the court when this case was submitted but has since left the court.

## II. Facts

This appeal involves a dispute over ownership of a small strip of land running along the common boundary of two abutting tracts of land owned by Murphy and Holman. The eastern border of Holman's property abuts the western border of Murphy's property, and the strip of land in dispute runs north-south between their respective properties.

In 1997, Holman acquired ownership of a tract of land consisting of approximately 80 acres. The chain of title leading to Holman's acquisition of the 80 acre lot in 1997 traces back to 1942, when her grandparents acquired title to the property. Holman's grandparents conveyed the 80 acre lot to Holman's parents in 1959. In 1964, Holman and her late husband moved onto the land. However, title to the property remained with her parents. Holman and her husband occupied the land as tenants. In 1990, Holman's parents created two beneficiary deeds conveying the west half of the property to Holman's sister and the east half of the property to Holman. The beneficiary deeds were set to take effect upon the death of the last surviving parent, which occurred in 1997. Holman acquired the east half of the property at that time. A few months after the last surviving parent's death, Holman's sister conveyed the west half of the property to Holman, giving Holman ownership of the entire 80 acre lot.

Murphy acquired ownership of a tract of approximately 60 acres of land in 1982, when he began living on the property and raising cattle. At the time he acquired the property, there existed an old wire fence running north-south along what he believed to be the western border of his property. Holman claims that the old wire fence existed prior to her moving onto the 80 acre lot in 1964 and, like Murphy, Holman believed that the fence line represented the eastern border of her property.

In 2004, Murphy and Holman hired a Missouri registered land surveyor, Mark Hawkins, to conduct a survey of the legal descriptions contained in the respective deeds to their properties. The survey revealed that the common boundary line between their properties, which runs approximately three-eights of a mile, was located west of, and roughly parallel to, the old wire fence that runs the entire length of the boundary line. The strip of land ("the disputed parcel") between the common boundary line and the fence line contains approximately 1.5 acres of land. After the survey revealed that the disputed parcel was located within the legal description of his 60 acre lot, Murphy mailed a letter to Holman stating that she had permission to use the disputed parcel. Murphy began clearing brush and cutting trees from the disputed parcel and, eventually, attempted to install posts and a wire fence near the common boundary line. Holman, however, thwarted Murphy's attempts to erect a fence near the common boundary line. Aided by her relatives, Holman removed some of the fence posts Murphy installed and threw them over the old wire fence back onto Murphy's property.

Murphy filed this lawsuit against Holman and her relatives requesting an order of ejectment in addition to damages for trespass and conversion. Holman filed a counterclaim to quiet title, alleging that she acquired title to the disputed parcel by adverse possession. Holman also sought a judgment for ejectment against Murphy and damages for trespassing on and removing trees from the disputed parcel. The portions of the judgment relevant to this appeal are with respect to Holman's counterclaims. The trial court held that Holman acquired ownership of the disputed parcel by adverse possession and fur-

ther determined that Murphy was liable for statutory trespass by entering on the disputed parcel and removing trees. The trial court awarded damages to Holman in the amount of $3,090 as a result of Murphy's trespass. Murphy appeals from the trial court's judgment on Holman's counterclaims. No appeal was taken from the judgment with respect to Murphy's claims.

### III. Standard of Review

In a court-tried case, this court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "All evidence favorable to the judgment and all inferences to be drawn from the evidence are accepted as true, and all contradictory evidence is disregarded." *Underwood v. Hash,* 67 S.W.3d 770, 774 (Mo.App.2002). This court defers to the trial court's determination of the credibility of witnesses and the weight to be given to their testimony. *Id.*

### IV. Discussion

There is no dispute as to the location of the common boundary of Murphy's property and Holman's property, or that the disputed parcel lies entirely within the legal description of the property to which Murphy is the record title owner. The sole issue in determining the outcome of Murphy's appeal is whether, under the standard of review, the record supports the trial court's finding that Holman acquired ownership of the disputed parcel by adverse possession. In his first, second, and third points, Murphy contends that Holman failed to prove that her use of the disputed parcel was actual, open and notorious, and lasted for a continuous period of at least ten years. In his final point, Mur-

phy asserts that Holman's failure to prove adverse possession takes away the basis for the trial court's award of damages for trespass upon the disputed parcel.

A party claiming ownership by adverse possession has the burden of proving by the preponderance of the evidence each and every element necessary to establish adverse possession for the entire statutory period. *Shuffit v. Wade,* 13 S.W.3d 329, 335 (Mo.App.2000). Such a claimant " 'must show actual, hostile, i.e., under a claim of right, open and notorious, exclusive and continuous possession of the property for ten years.' " *Id.* (quoting *Teson v. Vasquez,* 561 S.W.2d 119, 125 (Mo. App.1977)); *see also* section 516.010, RSMo 2002. The ten years of possession must be consecutive, but they need not be the ten years immediately preceding the filing of the petition. *Kitterman v. Simrall,* 924 S.W.2d 872, 876 (Mo.App.1996).

Murphy first challenges the trial court's finding that Holman had actual possession of the disputed parcel. The element of actual possession is defined as "the present ability to control the land and the intent to exclude others from such control." *Martens v. White,* 195 S.W.3d 548, 554 (Mo.App.2006). Whether an act constitutes actual possession " 'depend[s] on the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case.' " *Id.* at 555 (quoting *City of S. Greenfield v. Cagle,* 591 S.W.2d 156, 160 (Mo.App.1979)). The actual possession requirement "is less strict for wild undeveloped land than it is for developed property, because the nature, location and potential uses for the property may restrict the type of affirmative acts of ownership." *Id.* " 'Where the claimant occupies land without color of title, in order to prevail, he must show *physical possession* of the *entire area* claimed.' " *Shuffit,* 13

S.W.3d at 335 (quoting *Teson,* 561 S.W.2d at 126) (emphasis added). "A mere mental enclosure of land does not constitute the requisite actual possession." *Harris v. Lynch,* 940 S.W.2d 42, 45 (Mo.App. 1997). "There must be continued acts of occupying, clearing, cultivating, pasturing, building fences or other improvements, and paying taxes." *Eime v. Bradford,* 185 S.W.3d 233, 236 (Mo.App.2006). "The performance of all or any combination of these acts of occupancy serves as evidence of actual possession but is not conclusive." *Teson,* 561 S.W.2d at 126. "Each case must be decided on its own peculiar facts." *Id.*

■ Hawkins's survey of the legal descriptions contained in the parties' respective deeds demonstrates that the disputed parcel is part of the land owned by Murphy. The disputed parcel does not lie within the legal description of Holman's property, and Holman never possessed color of title to the disputed parcel. *See, e.g., Shuffit,* 13 S.W.3d at 335.

In its judgment, the trial court found that Holman demonstrated continual acts of occupying, maintaining, and improving the disputed parcel to support its finding of actual possession. With respect to maintenance and improvements, the judgment states that during Holman's occupancy, beginning in 1964, Holman's husband repaired the old wire fence "from time to time" to contain cattle on Holman's property. The judgment also states Murphy was aware that Holman's husband repaired the fence at least "two or three times." With respect to occupation of the disputed parcel, the judgment states that Holman and her predecessors' farm cattle "were corralled for spraying at one location in a makeshift structure constructed of pallets placed in the [d]isputed [p]arcel very near the [old wire fence] in an abandoned roadbed with raised banks on either side forming a chute for cattle containment, the [old wire fence] running along the bank along the east side of this roadbed." Holman stated that her husband constructed the pallet fence where the cattle were corralled and sprayed.

In addition to the findings set forth in the trial court's judgment, the record demonstrates additional evidence relevant to actual possession. Since Holman moved on the property with her husband in 1964, she believed that the eastern boundary of her property extended to the old wire fence. She allowed cattle to graze the entire 80 acre tract of her property, in addition to the disputed parcel, until her husband's death in 2001. Holman occasionally walked on the disputed parcel and went mushroom hunting. However, she testified that she never mowed, removed hay, cleared brush, or cut timber from the disputed parcel. Holman also never paid property taxes on the disputed parcel. She paid property taxes only on the approximately 80 acre tract of land as described in her deed. Holman also permitted her brother and Melvin Stewart to mushroom hunt and deer hunt on the disputed parcel, typically one time per year for each activity, and she allowed her brother to occasionally remove hay from the disputed parcel. There is evidence that a well existed on the disputed parcel; although, there is no indication of when, or by whom, the well was constructed.

In *Harris v. Lynch,* the court recognized that although each case must be decided on its own particular facts, "it has been generally held that maintenance of a non-boundary fence and allowing cattle to have access to undeveloped land, while evidence of possession, are not sufficient in themselves to establish adverse possession." 940 S.W.2d at 46. *See Cunningham v. Hughes,* 889 S.W.2d 864, 867 (Mo. App.1994) (allowing cattle to graze on a

strip of undeveloped land, repairing a fence constructed by a predecessor, and giving permission to others to hunt and cut wood on the property was insufficient to establish title by adverse possession); *Dambach v. James*, 587 S.W.2d 640, 643 (Mo.App.1979) (pasturing livestock on rough uncleared land contained by a non-boundary fence built by record title holders predecessors is insufficient in itself to establish adverse use). In *Harris*, an adverse possession claim was denied because the evidence showed that plaintiff and her predecessors did no more than allow cattle and horses to have access to the land in dispute, extend a portion of an already existing fence, and provide some maintenance of the fence. 940 S.W.2d at 47. The court stated that there was no evidence that plaintiff or her predecessors engaged in any other acts of possession such as clearing the disputed land, cultivating it, managing it for pasture, or building any other structures on it. *Id.*

Where a party claims rural land, as here, courts have required activities additional to maintaining a non-boundary fence, pasturing livestock, and permitting others to hunt, in order to establish adverse possession. *Id.* In *Miller v. Warner*, plaintiffs who claimed title by adverse possession of a strip of land north of an east-west fence, cleared the land of brush and trees, raised alfalfa on it, cultivated it up to the fence, and raised a bean crop on it. 433 S.W.2d 259 (Mo.1968). The court stated that although pasturing cattle or cutting timber do not in themselves establish adverse possession, they tend to show a claim of ownership which, if combined with plaintiff's acts of clearing, cultivating, and raising crops, established actual possession. *Id.* at 264. Moreover, in *Edmonds v. Thurman*, 808 S.W.2d 408 (Mo.App. 1991), the property in dispute was "wild and undeveloped land," and the court in that case said:

> The intent to take actual possession of such land requires less actual exercise of ownership by affirmative act than is required when the land is suitable for cultivation. Even so, occasional possessory acts, such as occasional use of the land for pasture or gathering up firewood or similar isolated acts, amount to nothing more than occasional trespasses which do not establish adverse possession.

*Id.* at 410–11 (citations omitted). The court in *Edmonds* also held that maintenance by the party claiming adverse possession of an "old fence" constructed by a predecessor in title was not enough to establish adverse possession. *Id.* at 411.

As to the element of actual possession, there is no substantial evidence to support the trial court's finding that Holman or her predecessors physically possessed the entire disputed parcel. Because Holman occupied land without color of title, she " 'must show *physical possession* of the *entire area* claimed' " in order to prevail. *Shuffit*, 13 S.W.3d at 335 (quoting, *Teson*, 561 S.W.2d at 126)(emphasis added). The mere fact that a fence existed prior to Holman's ownership of the land, and remained there throughout her occupation of the 80 acre property, does not establish actual use of the disputed parcel. *See Edmonds*, 808 S.W.2d at 411 (finding that, even when taking into account the fact that disputed land was wild and undeveloped, maintenance of an old fence not built by the claimant was not enough to establish actual possession). Holman's belief that the disputed parcel was her predecessors' property and, eventually, her property, is insufficient to constitute adverse possession, as her belief is a "mere mental enclosure of land." *Harris*, 940 S.W.2d at 45. She failed to demonstrate "*continual* acts of occupying, clearing, cultivating, pasturing, erecting fences or other improvements and paying taxes" on the disputed parcel,

as evidence of actual possession. *Teson,* 561 S.W.2d at 126 (emphasis added). Holman testified that she never mowed, removed hay, cleared brush, or cut timber from the disputed parcel, and she never paid taxes on it. Allowing cattle to graze on the disputed parcel, repairing the old wire fence constructed by a predecessor, constructing and using a makeshift pallet fence on a small portion of the disputed parcel for corralling livestock, and giving permission to others to hunt and occasionally remove hay from the property is not substantial evidence to establish title by adverse possession. Holman's own activity on the disputed parcel amounts to nothing more than occasional trespasses, which do not establish actual possession.

Because Holman did not prove actual possession, and a party claiming ownership by adverse possession must prove each and every element to establish adverse possession, Holman failed to prove adverse possession. *Shuffit,* 13 S.W.3d at 335. Murphy's second and third points regarding two additional elements of adverse possession need not be addressed. The true boundary line between the parties' properties is, therefore, the line defined by Hawkins's survey as set forth in the legal description contained in the respective deeds to the parties' properties.

In his fourth point, Murphy argues that the trial court erred in awarding to Holman $3,090 in damages for trespass on the disputed parcel. After the trial court found that the disputed parcel rightfully belonged to Holman, by way of adverse possession, the court found that Murphy trespassed on disputed property when he cut down trees, and Holman was entitled to $3,090 as a result. As Holman failed to prove ownership of the disputed parcel by adverse possession, and the survey demonstrates that the trees Murphy cut down lie within the true boundary of Murphy's property, no trespass occurred. *Eime v. Bradford,* 185 S.W.3d at 237–38. Accordingly, there is no substantial evidence to support the trial court's finding that Murphy trespassed on Holman's land.

The judgment of the trial court is reversed, and the case is remanded. The trial court shall enter judgment for Murphy on Holman's claims for adverse possession and trespass.

All Concur.