**George R. DUMPROFF and Donna M. Dumproff, as Co–Trustees under the provisions of private trust agreement dated March 10, 1992, Plaintiffs–Appellants,**

**v.**

**Carol Joy DRISKILL, as Trustee of the Carol Joy Driskill Trust dated 07/21/1994, Defendant–Respondent.**

**No. SD 31101.**

Missouri Court of Appeals,
Southern District,
Division One.

March 29, 2012.

Motion for Rehearing and Application for Transfer Denied April 19, 2012.

682

Randy J. Reichard, Lowther Johnson Attorneys at Law, L.L.C., Springfield, MO, for Appellant.

J.D. Baker, Baker Law Firm, L.L.C., Osceola, MO, for Respondent.

GARY W. LYNCH, Judge.

George R. Dumproff and Donna M. Dumproff, as co-trustees under the provisions of a private trust agreement dated March 10, 1992 (collectively "the Dumproffs" and individually "George" and "Donna"), appeal the trial court's judgment finding Carol Joy Driskill, as trustee of the Carol Joy Driskill Trust dated July 21, 1994 ("Carol"), the owner of three tracts of land by adverse possession.[1] The

---

1. Because many of the individuals involved in this case share surnames, we occasionally use first names in order to distinguish between them. No familiarity or disrespect is intended.

Dumproffs claim the trial court's judgment was erroneous because the actual possession, ten-year period, and open-and-notorious possession elements of adverse possession were not supported by substantial evidence.[2] Finding that the actual possession element of adverse possession for two of the three tracts for the requisite time period is not supported by substantial evidence, we reverse and remand the judgment as to those two tracts and affirm the judgment as to the third.

### Factual and Procedural Background

Viewed in the light most favorable to the judgment, *City of Gainesville v. Morrison Fertilizer, Inc.*, 158 S.W.3d 872, 874 (Mo. App.2005), the following evidence was adduced at trial.

In February 1999, the Dumproffs purchased a tract of mostly wooded land in Hickory County, Missouri ("the Dumproff Tract"), from Dave Dotson. The Dumproffs later deeded that tract to their trust. The Dumproffs' home is located on the southern bootheel of the property along a road, in one of the few cleared areas. The Dumproff Tract is surrounded on the north, west, and south (except for the bootheel hereinafter described) by property owned by Carol ("the Driskill Tract").

In 2006, the Dumproffs had their tract surveyed. The survey disclosed that the Dumproffs' deed legally described an 83.522–acre tract that consists of the East half of the Northeast Quarter of Section 21, Township 38, Range 20 (the "eighty"), and a bootheel below the southeast corner

of the tract. The bootheel is a rectangular-shaped tract measuring 450 feet east to west by approximately 250 feet north to south, the south boundary of which is a public road. In addition to showing the legal boundaries of the property according to its legal description, the survey also showed a fence that served to enclose most of the property. It disclosed, however, that the fence did not actually follow the boundary lines of the Dumproff Tract according to its legal description.

The variances between the fence and the legally described boundary lines created five disputed tracts—three within the Dumproff legal description but on the Driskill side of the fence, and two within the Driskill legal description but on the Drumproff side of the fence. The three disputed tracts within the Dumproff legal description include: a 0.441–acre rectangular tract running north and south on the west end of the bootheel ("Tract A");[3] a 10.531–acre tract that begins at the southwest corner of the eighty and bows to the east along the southern approximately three-fourths of the west side of the eighty to a point that is 249 feet east of the west boundary before gradually curving back to the west to intersect with the north boundary of the eighty some 204 feet east of its northwest corner ("Tract C"); and a 2.271–acre triangular tract in the northeast corner of the eighty, the hypotenuse of which runs from the northern boundary line to the eastern boundary line along the top of a seventy-foot bluff overlooking a creek below that flows through the trian-

---

**2.** The Dumproffs' fourth and fifth points challenge the trial court's judgment on the basis that it cannot be legally supported by the theory of "boundary by acquiescence." In her responsive brief, Carol conceded that the trial court's judgment could not have been premised upon that theory in the first instance because it is not supported by the record. At oral argument, attorneys for both

parties acknowledged that we need not address these points if the case is resolved on the basis of adverse possession.

**3.** The letter references to the disputed tracts in this opinion are consistent with Carol's Exhibit B, and with the designations used by the trial court below and by the parties at trial and on this appeal.

gular tract ("Tract E"). The two disputed tracts within the Driskill legal description include: a 0.738–acre tract adjacent to and along the southern boundary of the eighty and west of the bootheel ("Tract B"); and a 0.615–acre triangular tract, one leg of which sits on the northern boundary of the eighty beginning 204 feet east of its northwest corner ("Tract D"). Until the survey, the Dumproffs did not make any claim of ownership to the land outside the fence.

Carol and her husband, Marvin Driskill, purchased the first portion of the Driskill Tract from Richard and Violet Gunter in March 1973. This portion of the property abuts the Dumproff Tract to the west and south up to the bootheel, and for some time this portion has been referred to as "Rabbit Ranch." The Driskills acquired the remaining portion—the land bordering the north side of the Dumproff Tract—from Richard and Dorothy Cox ("the Cox property") in March 1980.

Marvin Driskill was born in 1939 and was raised within a mile of the disputed land. Upon marrying Carol and leaving home in 1959, Marvin moved to another nearby tract of land, once owned by his father and eventually conveyed to Marvin, located approximately a mile and a half from the Dumproff Tract. This tract abuts the Driskill Tract to the west. The land contained within the Driskill Tract was deeded to Carol's trust on July 28, 1994, as a result of the couple's estate planning; the remaining land owned by the Driskills was deeded to Marvin's trust.

Marvin Driskill first became familiar with Rabbit Ranch around 1953, when he was fourteen years old. His father took him deer hunting on the property, from early morning until late in the afternoon. At that time, the Dumproff Tract was owned by Lark Case, and Rabbit Ranch was owned by Ed Holmes. Also at that time, Marvin witnessed the building of the fence around the Dumproff Tract by con-

tract fence builders, Bill and Millie Lyons. Marvin talked with the Lyonses as they worked, and he testified that "[t]hey even cut the posts out of post oak trees you know, and split it. And they sharpened them with an axe." This is the same fence as shown on the Dumproffs' 2006 survey and is hereafter referred to as the "1953 fence."

Following his marriage to Carol, Marvin worked primarily as a cattleman. He observed various individuals running cattle on Rabbit Ranch, usually for about a year at a time; the land was more conducive to hunting than pasturing. The owner of the land to the north of the Dumproff Tract—Cox—ran cattle on his land every year.

Along the north-south fence on the west side of the Dumproff Tract, Marvin replaced an approximately 150–foot section of the 1953 fence after a tree fell on it; otherwise, the original 1953 fence remained in place. Marvin worked on the fence every year to keep it in good repair. Marvin always believed that the 1953 fence was the boundary line around the Dumproff Tract. Until the 2006 survey was conducted, Marvin intended to claim all of the property on his side of the fence as his own under his deed.

Shortly after purchasing Rabbit Ranch in 1973, Marvin built a barbed-wire crossfence. The easternmost part of this fence crossed 249 feet of disputed Tract C, the widest part of that tract, and intersected with the 1953 fence on the western portion of the Dumproff eighty. This was done to stop Marvin's cattle from running onto the Cox property. The other end of the crossfence connects with the fence from Marvin's property to the west. Marvin ran his cattle on Rabbit Ranch—on the south side of the cross-fence—from 1974 until approximately 2008. Although he did not pasture his cattle there before his purchase of the Cox property in 1980, Marvin

"was just sure" that the land north of the cross-fence—and to the west of the 1953 fence—was his property. The segment of land on the northern side of the cross-fence was used for hunting. At some point before the Dumproffs' purchase of the property, the immediately preceding owner, Dave Dotson, erected a deer stand there and asked Marvin's permission to do so. Dotson also asked Marvin's permission to put up a "No Trespassing" sign in the same area.

In addition to running cattle, Marvin hunted deer, turkeys, and mushrooms on the disputed property, and he allowed others to hunt on the land as well, including his daughters, grandsons, a granddaughter, and neighbors Randy Gardner and Roger Gates. Marvin and the others hunted "[t]hrough the years" up to the 1953 fence. Randy Gardner hunted on the property from approximately 1985 to 1994 and resumed hunting there again some years later. Gardner asked Marvin's permission to hunt on the land. When Gardner began to hunt the land again, he encountered Donna at the fence line, who asked him whose land he was supposed to be on. When Gardner replied, "Marvin Driskill's[,]" Donna informed him that he was no longer on the Driskills' land and that survey markers were up; the following year, when Gardner returned to hunt, there was a bulldozer trail around the area. Although he "knew it was [Marvin's] land[,]" he "didn't want to cause him any trouble." Roger Gates's grandmother, Ed Holmes, formerly owned Rabbit Ranch. From the age of three until he was twenty, Gates would hunt and help summer his father's cattle on the Rabbit Ranch property by running the fences to make sure none of the cattle escaped. Gates always knew the boundary line of Rabbit Ranch to be the 1953 fence, which was built shortly before his grandmother purchased the land.

When he first purchased Rabbit Ranch, Marvin cleared much of the land by "dozing" and "brush hogging" overgrown fields. He also cleared timber and "dozed" parts of disputed Tract C over the years, and, after purchasing the Cox property in 1980, he cleared a road through the disputed property to the Cox property, which he subsequently seeded. The road was located approximately fifteen feet from the fence in disputed Tract C to the north of the cross-fence. Marvin used the road for approximately one year as a means of getting to the Cox property; he then purchased another tract of land that afforded him easier access to that portion of his property.

From approximately 1985 to 1999, the Driskills rented the Dumproff Tract from its then-owner, Dave Dotson. Marvin rented the land so that he could pasture more cattle.

Shortly after purchasing the Dumproff Tract on February 4, 1999, George "dozed a road" around it on his side of the 1953 fence. Although the "road" did not "butt up" against the fence, "it was close." After having the survey conducted in 2006, George cut down the fence in numerous places and again "dozed" around the property, this time mostly along the survey line. This new "road" encroached over the survey line in a few places, even cutting down some of Carol's trees.

The Dumproffs filed a "PETITION FOR EJECTMENT and QUIET TITLE" on March 30, 2009. In that petition, the Dumproffs declared themselves owners in fee simple of the following:

The East One–Half of the Northeast Quarter; also beginning at the Northeast corner of the Northeast one-fourth of the Southeast Quarter, thence West 100 yards, thence South to the public road, thence East with said road to the East line of said forty, thence North to

place of beginning; all in Section 21, in Township 38, Range 20 (subject to existing roads and pole line easements) and situate in Hickory County, Missouri.

Also, a part of the Northeast one-fourth of the Southeast Quarter of Section 21, Township 38, Range 20, described as follows: Beginning 100 yards West of the Northeast corner of sad NE1/4 SE 1/4, thence West 150 feet, thence South to the public road, thence East with said road to a point 100 yards West of the East line of said NE¼ SE 1/4 thence North to the point of beginning, (subject to existing roadway easement) all situate in Hickory County, Missouri.

In Count I, the Dumproffs requested that the trial court quiet title in their names and restrict Carol from claiming any interest in the property. In Count II, the Dumproffs claimed that Carol was unlawfully withholding portions of their property and requested that they be awarded damages as a result. In response, Carol admitted to the accuracy of the claimed legal description but filed a counter-claim alleging ownership of three [4] tracts of land situated between her side of the 1953 fence line and the 2006 survey line. At all times in her answer and counter-claims, Carol maintained that she believed the fence was the boundary line. She also requested an injunction enjoining the Dumproffs from removing any further portions of the fence and trespassing onto the disputed land and requested that the Dumproffs be ejected from the disputed land.

Following a bench trial, the trial court entered judgment finding Carol to be the owner by adverse possession of disputed Tracts A, C, and E claimed in her counter-claim and further finding the Dumproffs to be the owners by adverse possession of disputed Tracts B and D. This appeal by the Dumproffs timely followed.

### Standard of Review

We "will affirm the trial court's determination 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Watson v. Mense*, 298 S.W.3d 521, 525 (Mo. banc 2009) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We take as true all evidence and reasonable inferences that can be drawn therefrom in the light most favorable to the judgment, disregarding all contrary evidence and inferences. *Watson*, 298 S.W.3d at 526; *City of Gainesville*, 158 S.W.3d at 874. In making its decision, "[t]he trial court is free to believe or disbelieve all, part[,] or none of the testimony of any witness." *Watson*, 298 S.W.3d at 525. Further, "the trial court is presumed to have made findings in accordance with the decree entered[,] and its judgment will be affirmed under any reasonable theory supported by the evidence, particularly where the parties do not request findings of fact and conclusions of law[.]" *Warren v. Tom*, 946 S.W.2d 754, 759 (Mo.App.1997).[5]

---

4. Carol's contention that she owned disputed Tracts A, C, and E falling on her side of the 1953 fence line was premised upon her position that the fence line was the actual boundary line between the properties due to adverse possession. In making such an argument, she necessarily conceded that the Dumproffs would, in turn, own disputed Tracts B and D, which were located on the Dumproffs' side of the fence but contained within the legal description of Carol's property. She conceded as much at trial. In any event, the disposition of ownership of disputed Tracts B and D is not at issue in this appeal.

5. Neither party requested specific findings in this case. See Rule 73.01. All rule references are to Missouri Court Rules (2011), unless otherwise indicated.

### Discussion

 Missouri's doctrine of adverse possession is derived from section 516.010,[6] which reads, in relevant part:

> No action for the recovery of lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

In order to prevail on a claim of ownership by adverse possession, the party making such a claim "must establish by a preponderance of evidence that possession was: 1) hostile and under a claim of right; 2) actual; 3) open and notorious; 4) exclusive; and 5) continuous for a term often years." *Reynolds v. Brill,* 302 S.W.3d 716, 718 (Mo.App.2010). The continuous ten-year requirement can be satisfied by a claimant tacking "his or her possession to that of his or her predecessors in interest, so long as the claimant can prove that the predecessors in interest consistently met each element of adverse possession during the time to which the claimant wishes to tack" *Id.* Although the ten years must be consecutive, it need not be the ten years immediately preceding the filing of the claim; however, "once the ten-year period has run, the possessor is vested with title and the record owner is divested." *Flowers v. Roberts,* 979 S.W.2d 465, 470 (Mo.

App.1998). Each adverse possession claim is unique and must be decided with an eye toward the nature, location, and character of the land at issue. *Reynolds,* 302 S.W.3d at 718.

 In their brief on appeal, the Dumproffs claim that the trial court's determination was erroneous as to three of the elements of adverse possession. Specifically, they contend that the findings that the Driskills' possession of the disputed land was actual, open and notorious, and for a period often years were not supported by substantial evidence.[7] We will address these points in that order. " 'Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide the case.' " *Kenney v. Wal–Mart Stores, Inc.,* 100 S.W.3d 809, 814 (Mo. banc 2003) (quoting *Zeigenbein v. Thornsberry,* 401 S.W.2d 389, 393 (Mo.1966) (internal quotations and citation omitted)).

### Actual Possession

 Actual possession is the present ability to control the land and the intent to exclude others from such control. *Dobbs v. Knoll,* 92 S.W.3d 176, 180–81 (Mo.App.2002). "What acts will characterize possession as 'actual' depend on the nature and location of the property, the uses to which it can be applied and all the facts and circumstances of a particular case." *City of South Greenfield v. Cagle,* 591 S.W.2d 156, 160 (Mo.App.1979). The actual pos-

---

6. All statutory references are to RSMo 2000, unless otherwise indicated.

7. Each of the Dumproffs' first three points relied on complains that the trial court's judgment as to that particular element was not supported by substantial evidence, was against the weight of the evidence, and misapplied and erroneously declared the law. However, as conceded by Dumproffs' counsel

during oral argument, the corresponding argument portions of their brief focus solely on attempting to demonstrate that the trial court's judgment was not supported by substantial evidence. "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Luft v. Schoenhoff,* 935 S.W.2d 685, 687 (Mo.App.1996).

session element of adverse possession is less strict for wild, undeveloped land than it is for developed property, because the nature, location and potential uses for the property may restrict the type of affirmative acts of ownership. *Luttrell v. Stokes*, 77 S.W.3d 745, 749 (Mo.App.2002).

*Martens v. White*, 195 S.W.3d 548, 554–55 (Mo.App.2006).

 Up until the Driskills' purchases of Rabbit Ranch in 1973 and the Cox property in 1980, the only evidence in the record of actual possession of disputed Tracts A, C, and E by the Driskills' predecessors in title is that they utilized their land for pasturing cattle, performed some occasional maintenance on the fence for that purpose, and allowed others to hunt on their property. The same is true for Tracts A and E after the Driskills' purchases up until the time the Drumproffs filed this action. However, while allowing cattle to graze on undeveloped land, repairing an existing non-boundary fence, and hunting on or allowing others to hunt on the property constitute some evidence of possession, each has generally been held insufficient, standing alone, to establish adverse possession. *Murphy v. Holman*, 289 S.W.3d 234, 239 (Mo.App.2009); *Harris v. Lynch*, 940 S.W.2d 42, 46 (Mo.App.1997); *Cunningham v. Hughes*, 889 S.W.2d 864, 867 (Mo.App.1994); *Dambach v. James*, 587 S.W.2d 640, 643 (Mo.App.1979). "A mere mental enclosure of land does not constitute the requisite actual possession." *Harris*, 940 S.W.2d at 45. In the absence of additional acts of possession, *see id.* at 47, the actual possession element of an adverse possession claim based only upon such actions is not supported by substantial evidence, and a judgment in favor of a claimant for adverse possession must be reversed. *Murphy*, 289 S.W.3d at 240. The Dumproffs' first point is partially granted as to disputed Tracts A and E.

 There was, however, additional evidence of possession related to disputed Tract C after the purchase of Rabbit Ranch by the Driskills in 1973, which requires further discussion and analysis. To establish actual possession, "[t]here must be continued acts of occupying, clearing, cultivating, pasturing, building fences or other improvements, and paying taxes." *Eime v. Bradford*, 185 S.W.3d 233, 236 (Mo.App.2006). "The performance of all or any combination of these acts of occupancy serves as evidence of actual possession but is not conclusive." *Teson v. Vasquez*, 561 S.W.2d 119, 126 (Mo.App.1977). As previously noted, "[e]ach case must be decided on its own peculiar facts." *Id.*

Here, soon after the Driskills purchased Rabbit Ranch in 1973, they built an east-west cross-fence, the eastern portion of which traversed disputed Tract C for 249 feet and perpendicularly connected to the north-south 1953 fence within the Dumproff Tract. The erection of this cross-fence was not only the construction of an improvement on disputed Tract C, but because it ran completely across the disputed tract and connected with the north-south fence on the Dumproff tract, it was a physical action that served to create two enclosures of Rabbit Ranch that included all of disputed Tract C and that had, up until that time, only been included in the Driskills' mental enclosure of their property. Coupled with the evidence of the Driskills' pasturing on the southern part and their dozing, clearing, and seeding on the northern part, there was substantial evidence before the trial court to support that the Driskills exercised the present ability to control disputed Tract C and intended to exclude others from such control so that the trial court could reasonably infer that they actually possessed disputed Tract C from and after the erection of their cross-fence in 1973. *See Martens*, 195 S.W.3d at 554–55.

### Open and Notorious Possession

In their third point, the Dumproffs claim that there is no substantial evidence in the record to support a finding that the Driskills' possession of disputed Tracts A, C, and E was open and notorious. Given that we have already determined there was no substantial evidence to support that the Driskills actually possessed Tracts A and E, we need only address this point as it relates to Tract C.

"The open and notorious element of adverse possession is satisfied by exercising visible acts of ownership on the disputed property." *Martens*, 195 S.W.3d at 555. " 'The reason for this requirement is to give the owner cause to know of the adverse claim of ownership by another.' " *Id.* (quoting *Thomas v. B.K.S. Dev. Corp.*, 77 S.W.3d 53, 60 (Mo.App.2002)).

The Driskills' cross-fence, which they erected in 1973, served as a visual act of their claimed ownership of disputed Tract C. The continued existence of this improvement on Tract C from that time until the date of trial served as a continuing daily notice to the owners of the Dumproff Tract that the Driskills were asserting the right to construct and maintain an improvement on Tract C. Similarly, the nature of that improvement, extending across the entire width of Tract C at its widest part and serving to enclose Rabbit Ranch (including Tract C) in two parts, also served as a continuing daily notice that the Driskills were asserting ownership of Tract C. Evidence that Dave Dotson, former owner of the Dumproff Tract, asked the Driskills for permission to hunt and build a deer stand on disputed Tract C supports the inference that such notice had in fact been communicated to the then-owner of the Dumproff Tract.

### Continuous Possession for Ten Years

In their second point, the Dumproffs claim that "there was not substantial evidence of a ten-year period during which the possession of tracts A, C and E by [Carol] or her predecessors met all of the required elements of adverse possession[.]" Once again, given that we have already determined there was no substantial evidence to support that the Driskills actually possessed Tracts A and E, we need only address this point as it relates to Tract C.

Possession must be continuous for a period often years. *Flowers*, 979 S.W.2d at 470. "[T]he ten-year period of continuous possession is one during which all of the required elements (hostile and under claim of right, actual, exclusive, open and notorious) have consistently been met." *Id.*

As previously discussed, the Driskills actually possessed and openly and notoriously possessed disputed Tract C commencing with the construction of their cross-fence in 1973. The evidence was undisputed that the cross-fence was continuously maintained thereafter. Thus, these elements were established for the requisite ten-year period in 1983, on the tenth anniversary of the erection of the cross-fence.

The other two elements—hostile and exclusive—were recently addressed in *Nutting v. Reis*, 326 S.W.3d 127 (Mo.App.2010), wherein the Court stated that "[a]dverse possession occurs when a border, even though erroneous, is observed by all parties as the boundary for the statutory period, and it becomes the true boundary." *Id.* at 129 (citing *Watson*, 298 S.W.3d at 526). "Where one adjoining landowner mistakenly believes he owns the land and occupies the land in question, the hostility requirement is satisfied." *Id.* at 130. To meet the exclusivity requirement, an adverse-possession claimant must have shown that they "wholly excluded" the owner from possession for the ten-year statutory period. *Martens*, 195 S.W.3d at

556 (citing *Flowers,* 979 S.W.2d at 470). In addition to the evidence supporting the Driskills' actual and open and notorious possession, as discussed *supra,* the trial court had before it Marvin Driskill's testimony that since the time the 1953 fence was built, which includes the ten-year period after the Driskills' cross-fence was erected and connected to it, he thought the eastern boundary of Rabbit Ranch extended to the 1953 fence and that no owner of the Dumproff property ever said otherwise until after the 2006 survey. In a situation where a fence line was mistakenly assumed to be the true boundary and the party claiming adverse possession "possessed, used[,] and improved the land, holding it as their own," there is a presumption of adversity. *Schaumburg v. Heafey,* 650 S.W.2d 697, 699 (Mo.App. 1983). This presumption was recognized and applied by this district in *Nutting,* 326 S.W.3d at 130. Given this presumption and that the Dumproffs offered no evidence rebutting it for the ten-year period after the construction of the Driskills' cross-fence in 1973, the trial court could have reasonably inferred that the Driskills' possession of disputed Tract C was both hostile and exclusive.

The Dumproffs' first point is granted as to disputed Tracts A and E. The Dumproffs' first, second, and third points as related to disputed Tract C are denied.

### Decision

The trial court's judgment is reversed as to disputed Tracts A and E, affirmed as to disputed Tract C, and the cause is remanded to the trial court for entry of a judgment consistent with this opinion.

BURRELL, P.J., and RAHMEYER, J., concur.