

# In the Missouri Court of Appeals
# Eastern District

NORTHERN DIVISION

ROGER and NANCY TIEMANN,     )     No. ED102920
     )
     Plaintiffs/Respondents     )     Appeal from the Circuit Court of
vs.     )     Marion County
     )
MARION E. NUNN, et al,     )     Hon. Rachel Bringer Shepherd
     )
     Defendants,     )     FILED:  August 2, 2016
     )
     and     )
     )
RANDALL and MARSHA LITTLE,     )

     Defendants/Appellants.

## OPINION

Randall and Marsha Little appeal the trial court's judgment quieting title to a 17-acre parcel of land in favor of Roger and Nancy Nunn Tiemann by adverse possession. We affirm.

## Background

Given the highly fact-specific nature of adverse possession cases, a thorough recitation of the evidence before the trial court is warranted. The parcel of land in question (the Property) is located on the northern edge of Marion County adjacent to Lewis County.  The county line draws the northern border.  The Fabius River forms a U shape tracing the borders to the west, south, and east.  Most of the Property is wooded, except for 4.59 acres of farm land forming a semi-circle at the top center of the U.  That semi-circle is the southern tip of a much larger field expanding north

across the county line into Lewis County and consisting of 133 acres owned and farmed by the Nunn family. The only vehicular access to the Property is a narrow private gravel road on the Nunn farm.

Many of the parties here are related by blood or marriage. The family tree begins with Nancy's great-grandfather, Marion L. "Tude" Nunn, who divided and conveyed three parcels of land to three of his six children. The 133 acres of farmland in Lewis County went to Nancy's grandfather, James Wilbur Nunn, and eventually to Nancy and her first cousins (Wilbur's grandchildren). Another parcel including the Property went to Mary Ann Nunn Lindstrom. Lindstrom died in 1985, leaving that parcel to her closest living heirs, namely her daughter Rosella Kolthoff and her other daughter's grandson, William Jones.[1] Kolthoff sold other parts of her parcel to different buyers who were not interested in acquiring the Property. Jones deeded his interest in the Property to Kolthoff in 1989, making her the sole owner of the Property. Kolthoff paid taxes on the Property but never used or visited it. Kolthoff sold the Property to the appellant Littles in 2009.

Meanwhile, however, Nancy's husband, Roger, had been farming the Property as part of the larger Nunn field for decades, until he learned of the Littles' claim of ownership. In 2012, the Tiemanns filed a petition to quiet title of the Property by adverse possession.[2] The Littles defended the action and filed a counterclaim seeking an easement of necessity on the Nunn farm to access the Property. The parties appeared before the trial court in 2014.

---

[1] Judge Bringer Shepherd was careful to disclose on the record that William Jones was her mother's half-brother. The judge assured the parties that she was unfamiliar with the property in dispute here, and neither party requested recusal.

[2] Prior to the filing, Nancy's cousins quitclaimed their respective interests in the Nunn farm to Nancy and Roger as tenants by the entirety, making the Tiemanns the sole owners of the 133 acres in Lewis County.

2

Roger testified that he started farming the Nunn land (the entire field comprised of 133 acres in Lewis County plus the 4.59 acres in Marion County) with Nancy's father, James Nunn (Wilbur's son), in 1965 after he and Nancy married. Roger explained that the 4.59-acre section in Marion county "was never separated out" from the larger Nunn field in Lewis County. "It was planted as one field." Counsel adduced records of the Farm Service Administration (FSA) dated 1989 and 2009 naming Roger as operator of the Nunn farm, including the 4.59 acres in Marion County. The Tiemanns shared crop revenue with the Nunn family. No one else ever farmed the land throughout that time, and Roger assumed that his annual tax bill for Marion County included the Property. Roger and the Nunns built and regularly maintained a levy on the Property to protect the field. Roger occasionally granted permission for third parties to hunt on the Property.

Neighbors Harold Wiseman and Merlin Eisenberg testified that Roger was the only person to work on the Property and to grant others permission to use it for hunting and passage via the levy.

Nancy testified to clarify the family tree, in part referring to a genealogical article written by a family member from the Wiseman branch in 1975 listing the names, lands, and other particulars of various descendants of Tude Nunn. Rosella Kolthoff was Nancy's great-aunt, so Kolthoff's daughter, Sandy Lillard, one of the defendant-appellants here, is Nancy's second cousin. Though reluctant to answer, Nancy confirmed that the Tiemanns and Lillards attended the same family Christmas gatherings "until about 20 years ago."

Sandy testified on behalf of the Littles,[3] revealing another connection in the family tree, namely that Sandy's sister-in-law (her husband's sister) is married to Roger's brother. Sandy also testified that her mother obtained a survey of the Property in 1986 (after Lindstrom's death). And

---

[3] Kolthoff was 93 and living in a nursing home at the time of trial.

tax records were adduced showing that Kolthoff paid taxes on the Property annually from 1987 ($18.95) to 2008 ($29.58). On cross-examination, Sandy conceded that Kolthoff never visited or farmed the Property while she owned it and never mentioned anything about the Tiemanns farming it.

Ruth Redman, a title agent, testified that she conducted a title search for the Littles before they purchased the Property from Kolthoff. She stated that Mark Twain Title Company "found a good chain of title down to Rosella Kolthoff" and she was unaware of any adverse claim.

Finally, appellant Randy Little testified that he was a real estate broker and appraiser with 22 years' experience, he owned other farms and commercial properties, and he purchased the Property "site unseen." He further testified that he was familiar with FSA procedures and, before the purchase, both Kolthoff and an FSA representative told Little that Roger had permission to farm the Property. Little "knew that there was no access … that it was landlocked," which precluded him from obtaining title insurance. He explained, "I'm not there but twice a year and … I would like to get an easement to it because it's landlocked. I'd like to be able to use it."

After the close of the evidence, the trial court accepted additional briefing on the specific standards for adverse possession as applied to unoccupied wooded lands and as between family members. Ultimately, the court found that the Tiemanns acquired the Property by adverse possession. Accordingly, the court quieted title in the Tiemanns' favor, rendering moot the Littles' counterclaim. The Littles appeal and assert that the evidence was insufficient to establish that the Tiemanns' possession was (1) actual as to the entire Property, (2) open and notorious, and (3) hostile.

**Standard of Review**

This court's review is governed by <u>Murphy v. Carron</u>, 536 S.W.2d 30 (Mo. banc 1976). We will affirm the trial court's determination unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. <u>Dumproff v. Driskill</u>, 376 S.W.3d 680, 687 (Mo. App. S.D. 2012) (quoting <u>Murphy</u>, 536 S.W.2d at 32). We take as true all evidence and reasonable inferences therefrom in the light most favorable to the judgment, disregarding all contrary evidence and inferences. <u>Id</u>.

**Analysis**

In order to prevail on a claim of ownership by adverse possession, a party must establish by a preponderance of evidence that possession was: 1) hostile and under a claim of right; 2) actual; 3) open and notorious; 4) exclusive; and 5) continuous for a term of ten years. <u>Dumproff,</u> 376 S.W.3d at 688. "Adverse possession presents mixed questions of law and facts, and the principles or elements to prove such a case are viewed with the view that every property is unique. Each case must be decided in light of its own unique circumstances. Much depends on the location, the character, and the use to which the land in question may reasonably be put." <u>Kohler v. Bolinger</u>, 70 S.W.3d 616, 619 (Mo. App. W.D. 2002).

*Actual Possession*

For their first point, the Littles contend that the record lacks substantial evidence of the Tiemanns' actual possession of the Property. Actual possession is "the present ability to control the land and the intent to exclude others from such control." <u>Dumproff</u>, 376 S.W.3d 688. What acts will characterize possession as actual depend on the nature and location of the property, the uses to which it can be applied, and all facts and circumstances of a particular case. <u>Id</u>.

5

"Where the claimant occupies land without color of title, he must show physical possession of the entire area claimed." Murphy v. Holman, 289 S.W.3d 234, 237 (Mo. App. W.D. 2009). "A mere mental enclosure of land does not constitute the requisite actual possession." Id. at 238. Rather, "there must be continued acts of occupying, clearing, cultivating, pasturing, building fences or other improvements, and paying taxes." Id. "The performance of all or any combination of these acts of occupancy serves as evidence of actual possession but is not conclusive." Id. "Each case must be decided on its own peculiar facts." Id.

Relying on the foregoing principles, the Littles assert that the Tiemanns' activity on the 12.41 acres of unfarmed wooded land was insufficient to establish ownership of the entire Property. However, the "actual possession" element of adverse possession "is less strict for wild, undeveloped land than it is for developed property, because the nature, location, and potential uses for the property may restrict the type of affirmative acts of ownership." Dumproff at 689. A survey of relevant precedent underscores the fact-specific nature of the inquiry.

Courts have found the evidence insufficient in cases where a claimant's activity is minimal or passive. In Edmonds v. Thurman, 808 S.W.2d 408 (Mo. App. S.D. 1991), the claimants' only act of ownership was maintenance of an old fence built by the defendants' predecessors in title, and "conspicuously absent" from the record was any evidence of the claimants' intent to exclude others from control of the disputed tract." Id. at 410. In Eime v. Bradford, 185 S.W.3d 233 (Mo. App. E.D. 2006), the claimant never asserted ownership by patrolling or posting a No Trespassing sign and never cut timber, ran cattle, or planted on the disputed property, though she farmed a field adjacent to it. Id. at 235. In Murphy, the claimant picked mushrooms, allowed cattle to graze, and allowed others to hunt on the disputed property but never mowed, removed hay, cleared brush,

6

cleared timber, or paid taxes on it. 289 S.W.3d at 240. On these facts, the court described the claimant's limited activities as "nothing more than occasional trespasses." Id.

By contrast, courts have found the evidence sufficient where such activities combine with additional facts demonstrating an intent to possess. For example, in Dumproff, the evidence was insufficient as to two tracts where the claimants repaired a pre-existing fence and allowed grazing and hunting on the property, but the evidence was sufficient as to a third tract where the claimants farmed a portion of the disputed property and built a cross-fence to separate it from pasture. Dumproff, 376 S.W.3d at 689. In Whiteside v. Rottger, 913 S.W.2d 114 (Mo. App. E.D. 1995), the evidence was sufficient where the claimants built a fence and a well on the property, hunted and allowed others to hunt, cleared timber, and "exercised some control over who had access to the parcel." Id. at 120. The court reasoned, "Those were the only activities that could be done on the property. The land was not fit for cultivation or building and was subject to flooding. Indeed, no one would have allowed the property to be used or disturbed in any other fashion." Id.

Under the foregoing authorities and this court's standard of review – deferring to the trial court on matters of fact and viewing the evidence in the light most favorable to the judgment –the trial court's finding of actual possession is supported by substantial evidence here. The Tiemanns had exerted control over the entire Property at least since 1985. They cultivated the 4.59 acres of farmland on the Property during that time. Roger and the Nunns built and consistently maintained a levy on the Property. Roger alone cleared debris when the levy failed. Roger was the only person to work the property and to control access to it. Neighboring landowners confirmed the Tiemanns' dominion and control of the Property. Similar to Whiteside, the wooded portion offered limited uses beyond hunting.[4]

_____

[4] Although not directly adduced through witness testimony, in closing arguments, counsel for the Tiemanns argued as a point of common knowledge (without objection) that woodlands serve to protect farm fields

7

According to the Littles' logic, however, the Tiemanns still failed to exercise sufficient dominion over the wooded portion because they chose not to clear or log the timber or develop the land for other purposes. We decline to impose such a mandate in direct contravention of the lower standard for wild lands. As the Littles concede in point II of their brief, landowners "might go for lengthy time periods without having any reason to be on the 'wild' property."

The only fact weighing against the Tiemanns is that they did not pay taxes on the Property. But "payment of taxes is not conclusive on the issue of whether a person has acquired ownership of property by adverse possession." Hearod v. Baggs, 169 S.W.3d 198, 205 (Mo. App. S.D. 2005). In all other respects, the entirety of the record illustrates the Tiemanns' exercise of ownership of the Property.

"The actuality of possession and the intent with which dominion over land is exercised may be shown by an almost endless combination of circumstances," and "each case must be ruled on its own facts." Miller v. Warner, 433 S.W.2d 259, 263 (Mo. 1968). Under applicable precedent and on the particular combination of circumstances in the present record viewed through the lens of our standard of review, the evidence is sufficient to support the trial court's finding of actual possession of the entire Property. Point I is denied.

*Open and Notorious*

For their second point, the Littles contend that the record lacks substantial evidence of the Tiemanns' open and notorious possession of the Property. "The open and notorious element of adverse possession is satisfied by exercising visible acts of ownership on the disputed property." Martens v. White, 195 S.W.3d 548, 555 (Mo. App. S.D. 2006). "The reason for this requirement is to give the owner cause to know of the adverse claim of ownership by another." Id.

---

from flooding. Counsel for both parties disputed whether the timber itself was valuable, the Tiemanns' counsel suggesting that logging the area would have been more trouble than profit.

The Littles argue that the Tiemanns failed to demonstrate open and notorious possession in that Kolthoff was unaware of the Tiemanns' activity on the Property. Specifically, the Tiemanns never notified Kolthoff of, or requested permission for, their operations on the Property, and Kolthoff was "an elderly female" with "very little reason or likelihood of spending much time on property of this nature." The Littles urge this court to adopt a higher standard of proof on these facts seeing as "much of the farmland and rural property in Missouri is owned by older women these days." We reject the implication. Kolthoff was 64 when she inherited the Property and had the wherewithal to commission a survey and sell adjacent land to other buyers.

Moreover, actual knowledge or notice is not required. Although the open and notorious requirement *can* be met by showing a respondent's actual knowledge of the adverse claim, absent proof of actual knowledge, this requirement can also be satisfied by demonstrating that the claimant's possession is "conspicuous, widely recognized, and commonly known." Green v. Lange, 797 S.W.2d 765, 768 (Mo. App. E.D. 1990). "Knowledge or notice in such cases has been held to mean knowledge of all that would be learned by reasonable inquiry." Id. In Williams v. Frymire, 186 S.W.3d 912 (Mo. App. S.D. 2006), the evidence of open and notorious possession was sufficient where the claimants mowed grass on the disputed property for 40 years without anyone else claiming an interest, and the claimants' neighbors testified that the disputed property had always been considered as part of the claimants' yard. Id. at 921. In Whiteside, the evidence was deemed sufficient where "persons in the area considered the parcel as [the claimants'] property" and the claimants "used the property as they saw fit." 913 S.W.2d at 121.

Based on these standards, the record contains ample evidence that the Tiemanns' possession of the Property was open and notorious. As detailed above, the Tiemanns worked the

9

land as their own, and their neighbors believed them to own the Property. The Tiemanns' possession was conspicuous, widely recognized, and commonly known. Point II is denied.

*Hostile*

For their third point, the Littles assert that the record lacked substantial evidence that the Tiemanns' possession of the Property was hostile. "For possession to be hostile, neither knowledge of the actual title holder nor intent to deprive him of title is required. It is only necessary the claimant intended to occupy and did occupy the land as his own." Kohler, 70 S.W.3d at 621. "The intent with which the occupant has held possession is to be determined from all the surrounding circumstances and especially from his acts." Williams, 186 S.W.3d at 919. *Accord*, Martens, 195 S.W.3d at 555 (a claimant's intent may be inferred from his acts of dominion over the land).

The Littles argue that the Tiemanns farmed the land with Kolthoff's permission, and permissive use is not hostile. The record contains conflicting evidence as to whether the Tiemanns had permission to occupy and farm the Property. Randy Little testified that both Kolthoff and the FSA indicated that the Property was farmed with permission. But Sandy Lillard testified that her mother never mentioned anything about the Tiemanns farming the Property or her permitting them to do so. Roger did not confirm such permission and speculated (without objection) that FSA records were inaccurate in that respect perhaps because Roger and the Nunns had farmed the Property for decades as part of their larger field in Lewis County. Roger further testified that Kolthoff never contacted him demanding rent or for any other reason, and he believed that his Marion County tax bill included the Property.

Despite the Littles' attempt to re-litigate the facts, this court defers to the trial court's determination of the witnesses' credibility and the weight to be given to their testimony. Murphy v. Holman, 289 S.W.3d at 237. "The trial court is free to believe or disbelieve all, part, or none of

10

the testimony of any witness." Dumproff, 376 S.W.3d at 678. Thus, trial court here was free to disbelieve Randy's testimony, to believe Sandy's testimony, and to infer from Roger's testimony and the entirety of the record that the Tiemanns never obtained Kolthoff's permission to occupy the property because they considered themselves the owners. The remaining evidence in the record demonstrates the Tiemanns' intent to occupy the land as their own.

Finally, the Littles submit that the evidence is still insufficient given the particular facts of this case because "there is a greater standard of proof required when the parties involved in an adverse possession claim are family members." Sleepy Hollow Ranch LLC v. Robinson, 373 S.W.3d 485, 496 (Mo. App. S.D. 2012). But the family connection here is distant. Nancy and Sandy are second cousins in a large extended family. Both testified that they no longer attended the same Christmas gatherings at the Lillards' residence. In fact, Nancy initially refused to answer the question and ultimately replied that the Tiemanns stopped attending 20 years ago. Given this record, the trial court was free to give little or no weight to the tenuous family connection. See Soderholm v. Nauman, 409 S.W.3d 382, 392 (Mo. App. W.D. 2013) (distant relation did not establish "family closeness" suggesting permissive use). Moreover, even this higher standard between family members does not prevent a finding of adverse possession under circumstances where the evidence of adverse possession is strong. Lancaster v. Neff, 75 S.W.3d 767, 775 (Mo. App. 2002). The present record satisfies that standard. Point III is denied.

11

**Conclusion**

The record contains substantial evidence supporting the trial court's finding that the Tiemanns' possession of the Property was actual, open and notorious, and hostile. The trial court's judgment is affirmed.

_____
Lisa Van Amburg, Judge

Roy L. Richter, J., and
James M. Dowd. J., concur.