

# SUPREME COURT OF MISSOURI
## en banc

THE EMPIRE DISTRICT ELECTRIC )    *Opinion issued April 20, 2021*
COMPANY, A KANSAS CORPORATION, )
AND WESTAR GENERATING, INC., A )
KANSAS CORPORATION, )
  )
           Respondents, )
  )
v. )    No. SC98380
  )
JOHN THOMAS SCORSE, AS TRUSTEE )
UNDER THAT CERTAIN TRUST )
AGREEMENT DATED NOVEMBER 17, 1976, )
AND ITS UNKNOWN SUCCESSORS AND )
ASSIGNS, AND JOHN THOMAS SCORSE, )
INDIVIDUALLY, AND HIS UNKNOWN )
HEIRS AND ASSIGNS, )
  )
           Appellant. )

## APPEAL FROM THE CIRCUIT COURT OF NEWTON COUNTY
The Honorable Kevin Selby, Judge

The Empire District Electric Company and Westar Generating, Inc., (collectively, the "Utilities") filed a petition to quiet title against John Scorse, both individually and as a trustee, and his successors in interest, concerning a tract of land in Newton County, Missouri. Mr. Scorse asserted counterclaims against the Utilities, including a claim of ownership by adverse possession. In July 2016, Mr. Scorse filed a motion for summary

judgment. The circuit court overruled Mr. Scorse's motion but, under its authority in Rule 74.04(d), deemed a series of facts in the motion established for all purposes. After a bench trial, the circuit court entered judgment in favor of the Utilities. Mr. Scorse appeals, arguing the circuit court erred in failing to include in its judgment the facts it earlier deemed established under Rule 74.04(d). Mr. Scorse also contends the circuit court misapplied the law in failing to grant his claim of adverse possession. This Court has jurisdiction under article V, section 10 of the Missouri Constitution. For the reasons set forth below, the circuit court's judgment is affirmed.

## Background

This case concerns title to an approximately 15-acre tract of land in Newton County, located north of Shoal Creek near Missouri's border with Kansas (the "Disputed Property"). Bordering the Disputed Property to the west is Scorse Farms, which is now owned by the Scorse Family Trust. The property was transferred to Mr. Scorse's family in 1975 by warranty deed from Orville and Lucille Jacobs (the "1975 purchase"). In the 1975 purchase, Mr. Scorse and his father believed the Disputed Property was part of the property being purchased.

The Utilities operate a power plant north of the Disputed Property. In September 1999, the Utilities bought approximately 200 acres, including the Disputed Property, from Carl and Grace Elkan for future plant expansion and direct access to Shoal Creek. In the course of this purchase, the Utilities had the land surveyed and pinned. In 2008, the Utilities started to fence the boundaries of these 200 acres. The Utilities bulldozed trees and fenced the tract's east side, then notified Mr. Scorse they planned to fence the

2

boundary with his land.  Mr. Scorse disputed the property line and removed fencing the Utilities built along the property line.

In 2015, the Utilities sued to quiet title, and Mr. Scorse filed a counterclaim for adverse possession.  Mr. Scorse sought summary judgment on his claim.  The circuit court overruled Mr. Scorse's motion but deemed several facts established for all purposes, including trial, pursuant to Rule 74.04(d).  The circuit court later reconsidered these facts pursuant to the Utilities' motion, but several facts remained established for all purposes (the "Rule 74.04(d) facts").  These facts, taken from Mr. Scorse's summary judgment motion, are as follows:

1.    Defendant John Scorse filed a Counter-Petition in this matter against Plaintiffs The Empire District Electric Company and Westar Generating, Inc. on or about February 19, 2016 claiming, among other things, adverse possession to real property located in Newton County to which Plaintiffs alleged they became title owners of in September 1999.

2.    The property in dispute lies within Sections 23 and 26 of Township 27 of Range 34 in Newton County, Missouri north of Shoal Creek and is described more specifically as follows ("the disputed property"):

All of the West 700 feet of the Northwest Quarter of the Northeast Quarter of Section 26, Township 27 North, Range 34 West, Newton County, Missouri lying North of the main channel of Shoal Creek.

ALSO a part of the Southwest Quarter of the Southeast Quarter of Section 23, Township 27 North, Range 34 West, Newton County, Missouri, described as beginning at a found pipe at the South Quarter of Section 23, thence S88°09'58"E 700.00 feet (m. 699.61 feet) to a found iron pin; thence N1°48'29"E 37.88 feet to a pipe post; thence N87°16'04"W 525.68 feet to the west line of said SW1/4SE1/4; thence S1°46'18"W 410.90 feet to the point of beginning; containing in total 15.05 acres more or less.

3. Plaintiffs [the Utilities] alleged they purchased the disputed property from Carl M. Elkan and Grace M. Elkan, Co-Trustees of the Carl M. Elkan Revocable Trust by way of warranty deed and a quit-claim deed (henceforth "the Elkans").

4. In 1975, Defendant Scorse's family purchased approximately 180 acres within Sections 23 and 26 of Township 27 of Range 34 in Newton County, Missouri north of Shoal creek that is directly adjacent to the disputed property.

8. Prior to purchasing the property in 1975, Defendant Scorse and his father walked the entire property, including the disputed property, and Defendant Scorse believed the disputed property was part of the property being purchased.

9. After walking the disputed property in 1975, Defendant Scorse did not see any evidence that anyone else had possession of the disputed property other than the seller representing that it was part of the property being purchased.

11. From 1975 and continuing thereafter to present, Defendant Scorse and his family have intended to possess the disputed property.

13. From 1975 and continuing thereafter to present, Defendant Scorse and his family intended to own the disputed property regardless of record ownership.

14. In 1975 and continuing thereafter to present, Defendant Scorse did not see any evidence or have any knowledge that the Elkans were occupying, possessing, or using the disputed property.

15. From 1975 and continuing thereafter to present, the Elkans never gave any indication to Defendant Scorse and his family that they owned the disputed property.

17. From 1975 and continuing thereafter to present, Defendant Scorse and his family have had unfettered access to the disputed property.

18. In 1980, Defendant Scorse's family built a home residence on property within a short walking distance of the disputed property.

20. The disputed property is contiguous to the backyard of Defendant Scorse's home residence.

4

22.  Over the years from 1975 to present, Defendant Scorse and his family have built and/or maintained multiple deer stands on the disputed property.

35.  Over the years from 1975 to present, Defendant Scorse and his family have drawn and removed water from the disputed property for irrigation purposes.

37.  Beginning in approximately the early 1990s, Defendant Scorse and his family painted various fence posts and trees on the disputed property with purple paint warning others to not trespass on the disputed property.

38.  Over the years from 1975 to present, Defendant Scorse and his family have removed rocks and stones from the disputed property for decorative purposes.

39.  Over the years from 1975 to present, Defendant Scorse and his family have fished in Shoal Creek from the disputed property.

40.  Over the years from 1975 to present, Defendant Scorse and his family have explored various caves on the disputed property.

44.  From 1975 and continuing thereafter to present, the Elkans never objected to Defendant Scorse or his family to the fencing serving as the boundary line between Defendant Scorse's property and property the Elkans owned to the north and east of the disputed property.

47.  Defendant Scorse immediately repaired the fencing that Plaintiffs cut and re-enclosed the disputed property.

48.  In approximately 2011, Plaintiffs attempted to build a north-south fence that separated the disputed property from the property purchased by Defendant Scorse's family in 1975.

49.  Defendant Scorse immediately removed the fencing that Plaintiffs attempted to build and returned the materials to Plaintiffs so that the disputed property continued to be enclosed by fencing with the property Defendant Scorse's family purchased in 1975.

53.  From 1975 and continuing thereafter to present, Defendant Scorse and his family intended to exclude all others from possession and ownership of the disputed property.

55. From 1975 and continuing thereafter to present, nobody gave Defendant Scorse and his family permission to possess and occupy the disputed property.

59. Plaintiffs purchased approximately 200 acres from the Elkans in 1999 that Plaintiffs allege includes the disputed property.

60. Plaintiffs purchased the property from the Elkans in order to gain access to Shoal Creek.

61. The disputed property constitutes a small portion of the approximately 200 acres Plaintiffs purchased from the Elkans in 1999.

62. Section 26 of the disputed property is the only portion of the approximate 200 acres that borders Shoal Creek.

63. Section 26 of the disputed property was a very important part of the purchase since it borders Shoal Creek and the point of the entire purchase was to access Shoal Creek.

64. Section 26 of the disputed property was the only portion of the property that was transferred to the Elkans by quitclaim deed.

65. All of the other property was transferred to the Elkans by warranty deed.

66. Plaintiffs understood that a quitclaim deed meant the Elkans made no warranty or guarantee that they had good title to Section 26 of the disputed property in 1999 that bordered Shoal Creek.

67. Plaintiffs understood that of the approximate 200 acres transferred by the Elkans the only part to which the Elkans made no warranty or guarantee that they had good title to was the portion of the disputed property that bordered Shoal Creek.

68. Plaintiffs did not physically inspect the disputed property before allegedly purchasing it in 1999.

72. The title insurance policy concerning Plaintiffs' purchase of land from the Elkans in 1999 excludes from coverage any discrepancies caused by fencing that was not located on a property line.

Prior to trial, Mr. Scorse and the Utilities entered into a joint stipulation of facts. In Mr. Scorse's request for findings of fact and conclusions of law filed prior to trial, Mr. Scorse requested that the Rule 74.04(d) facts be included in the judgment. The claims eventually were tried at a bench trial, where there was extensive evidence introduced regarding the ownership of the Disputed Property and Mr. Scorse's adverse possession claim. Each party introduced witnesses who testified about a variety of issues, including Mr. Scorse's use of the property and what fencing surrounded the Disputed Property. At the conclusion of the trial, the circuit court entered judgment for the Utilities. The circuit court's 39-page judgment began by restating the paragraphs of the parties' stipulated facts but made no mention of the Rule 74.04(d) facts. The facts it did include are as follows:

1. Plaintiff The Empire District Electric Company ("Empire") is a Kansas corporation in good standing authorized to do business in Missouri. Empire is an electrical utility regulated by the Missouri Public Service Commission under Chapter 386 of the Revised Statutes of Missouri, and it owns real property and does business in Newton County, Missouri.

2. Plaintiff Westar Generating, Inc. ("Westar") is a Kansas corporation in good standing authorized to do business in Missouri. Westar owns real property in Newton County, Missouri.

3. Defendant John Scorse is an individual who resides in Newton County, Missouri. John Scorse is a party to this action in his individual capacity and as Trustee of The Scorse Family Trust dated November 5, 2015.

4. The "Disputed Property" is a tract of land located in Newton County, Missouri, described as follows:

All of the West 700 feet of the Northwest Quarter of the Northeast Quarter of Section 26, Township 27 North, Range 34 West, Newton County, Missouri lying North of the main channel of Shoal Creek.

7

ALSO a part of the Southwest Quarter of the Southeast Quarter of Section 23, Township 27 North, Range 34 West, Newton County, Missouri, described as beginning at a found pipe at the South Quarter of Section 23, thence S88°09'58"E 700.00 feet (m. 699.61 feet) to a found iron pin; thence N1°48'29"E 37.88 feet to a pipe post; thence N87°16'04"W 525.68 feet to the west line of said SW1/4SE1/4; thence S1°46'18"W 410.90 feet to the point of beginning; containing in total 15.05 acres more or less.

5.     The Disputed Property is shown as TRACT 3 on the survey prepared by L & L Surveys Inc., of Neosho, Missouri, dated April 3, 2015 ("L & L Survey"). A true and correct copy of the L & L Survey is Defendants' Exhibit A (hereinafter "D. Ex").

6.     On November 30, 2015, Plaintiffs filed their Petition asserting a single count to quiet title to the Disputed Property in them, in accordance with the Quiet Title Statute, Section 527.150, RSMo.

7.     On February 19, 2016, Defendant filed his answer and Counter-Petition in which he denied Plaintiffs' quiet title claims, and asserted counterclaims against Plaintiffs asserting ownership of the Disputed Property by adverse possession (Count I), as well as claims of ejectment (Count II) and trespass (Count III).

8.     On September 1, 1999, Carl M. Elkan and Grace M. Elkan, Co-Trustees of the Carl M. Elkan Revocable Trust dated July 3, 1995 ("Elkans"), deeded three adjoining tracts of land to Plaintiffs, with an undivided sixty percent (60%) interest to Empire and forty percent (40%) to Westar. Tracts I and II were conveyed by a Trustee's Warranty Deed dated September 1, 1999 and a Corrective Trustee's Warranty Deed dated December 15, 1999, true and correct copies of which are P.Ex. 1 and 2 ("P. Ex. 1 and 2"). Tract III was conveyed by Trustees' Quit Claim Deed dated September 1, 1999 and Corrective Trustees' Quit Claim Deed dated December 15, 1999, true and correct copies of which are P. Ex. 3 and 4.

9.     The three tracts deeded to Plaintiffs by the Elkans are shown on the survey by Allgeier, Martin, & Associates dated September 21, 1999, revised June 29, 2000, a true and correct copy of which is P. Ex. 5 ("Allgeier Survey"). Tracts I and II are shown in yellow and Tract III is shown in green. The location of the Disputed Property is shown as red dotted lines on the Allgeier survey.

10.  The Disputed Property consists of all of Tract III and a small portion of Tract II on the Allgeier Survey.

11.  Plaintiffs purchased Tracts I, II, and III from the Elkans for a total purchase price of $715,080.00. The purchase price allocated to the Disputed Property was $1,500.00 per acre, or a total of $22,575.00. A true and correct copy of the Purchase Agreement dated August 11, 1999, and the letter dated June 24, 1999 from Robert Barchak of Empire establishing the allocation of the purchase price, is attached as P. Ex. 6.

12.  J.Ex. 1 is a true and accurate close-up aerial photograph of the Disputed Property, the boundaries of which are shown in red dotted lines. (J.Ex. 1)

13.  J.Ex. 2 is a true and accurate distant view aerial photograph of the Disputed Property and surrounding properties. It shows the locations of surrounding properties owned by Defendant, his mother Shirley Scorse, and property owned by Plaintiffs. (J.Ex. 2)

14.  John Scorse farms # 1, 2, and 3 are located immediately west of the Disputed Property. John Scorse farms # 1 and 2 join the west boundary of the Disputed Property. (J.Ex. 2)

15.  The ownership and conveyance history of John Scorse farms #'s 1, 2, and 3 is as follows:

> March 9, 1954: Warranty Deed from Fred and Lyla Braun to Richard and Betty Swaim.
> March 16, 1972: Warranty Deed from Richard and Betty Swaim to Orville and Lucille Jacobs.
> June 24, 1975: General Warranty Deed from Orville and Lucille Jacobs to Sidney and Shirley Scorse.
> November 17, 1976: Missouri Warranty Deed from Sidney and Shirley Scorse to The Sidney W. Scorse, Jr. Trust dated November 17, 1976.
> April 24, 2014: Trustee's Warranty Deed from the Sidney W. Scorse, Jr. Family Trust, as established under, and previously known as The Sidney W. Scorse, Jr. Trust dated November 17, 1976 to John Scorse.
> November 9, 2015: Quit-Claim Deed from John and Jeanne Scorse to John and Jeanne Scorse as Co-Trustees of The Scorse Family Trust dated November 5, 2015.

16. John Scorse is fully empowered to act as Trustee of the Scorse Family Trust, and act as the sole representative of the trust in this matter.

17. The Shirley Scorse farm, shown on J. Ex. 2, was acquired via Warranty Deed from Danny and Carol Lea to Shirley Scorse on December 18, 1984.

18. Defendant's father, Sidney Scorse, the Scorse family, and John Scorse (individual or through corporations or trusts owned by them) have operated a cattle ranch on John Scorse farm #'s 1, 2, and 3 since 1975. The Scorse ranch operation grew to include the Shirley Scorse farm and two other nearby farms located in Kansas, farm # 4 (83 acres) and farm # 5 (60 acres) acquired in the late 1980's or early 1990's.

19. The Disputed Property was not described in the deeds in the chain of titles described above in Paragraphs 14 and 15. As such, Defendant's claim to ownership of the Disputed Property is based solely on adverse possession and not through any deed or record title.

20. From 2005 to present, Plaintiffs have been assessed the property taxes for the Disputed Property and have paid those taxes. Defendants have never paid taxes after claiming ownership of the disputed property. True and correct copies of Empire's tax records for a portion of this time period are attached as P. Ex. 7, and Westar's are attached as P. Ex. 8.

21. True and correct copies of the front cover of the plat books for the years 1965, 1986, 1994 and 2008, and the excerpts from those plat books showing the Disputed Property and surrounding properties, are attached as P. Ex. 9, 10, 11, and 12, respectively.

22. In 1945, Empire received a power line easement over the Disputed Property from Bagdad Grocery; Eddie Daniel; Dan Murphy; L.N. and Mary Barbee; George and Faye Potter; and K.E. and Jean Kimmel. Defendant does not seek, in his Counter-Claims, to eliminate or affect Empire's power lines or easement over the Disputed Property.

23. The parties stipulated to the foundation, authenticity and admission into evidence of all exhibits referenced in this Stipulation, including J. Ex. 1 and 2; P. Ex. 1 through 12; and D. Ex. A.

Mr. Scorse timely moved the circuit court to amend its judgment, arguing the circuit court erred in failing to include the Rule 74.04(d) facts and, partly because it

10

ignored certain Rule 74.04(d) facts, Mr. Scorse claimed the circuit court misapplied the law by failing to grant his adverse possession claim. The circuit court overruled Mr. Scorse's motion, and Mr. Scorse appeals.

**Analysis**

In a court-tried case, an appellate court must affirm the circuit court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "[T]his Court reviews *de novo* both the trial court's legal conclusions and its application of law to the facts." *Zweig v. Metro. St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013).

Mr. Scorse argues the circuit court cannot undo a Rule 74.04(d) order, which establishes facts for all purposes, without notice to the parties. Mr. Scorse asserts that, without such notice to the parties, any facts deemed established in the Rule 74.04(d) order must be taken as true at trial and on appeal and the circuit court erred in ignoring the Rule 74.04(d) facts. Mr. Scorse also contends that some of the conclusions of law in the circuit court's order conflicted with the Rule 74.04(d) facts and that, if the circuit court properly considered the Rule 74.04(d) facts, the law of adverse possession would mandate judgment in his favor on that claim.

The Utilities argue the circuit court was not required to include the Rule 74.04(d) facts in its judgment because Rule 74.04(d) does not mandate inclusion of all such facts in a final judgment following a subsequent trial. The Utilities contend many of the facts were irrelevant or immaterial to the conclusions of law in the circuit court's judgment or

11

were ambiguous and subject to further testimony at trial. Additionally, the Utilities assert Rule 74.04(d) does not authorize or permit summary judgment to be entered on facts when the summary judgment motion is overruled.

**I.**

First, this Court must address whether the circuit court could enter its order establishing the Rule 74.04(d) facts as uncontroverted and established for all purposes, including trial, when no judgment was entered. Rule 74.04(d) provides:

> **Case Not Fully Adjudicated on Motion.** If on motion under this Rule 74.04 *judgment is not entered upon the whole case* or for all the relief asked and a trial is necessary, the court by examining the pleadings and the evidence before it, by interrogating counsel, and by conducting a hearing, if necessary, shall ascertain, if practicable, what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. The court shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action *the facts so specified shall be deemed established*, and the trial shall be conducted accordingly.

(Emphasis added.)

The only prerequisite for a circuit court to enter an "order specifying the facts that appear without substantial controversy" under Rule 74.04(d) is that "judgment is not entered upon the whole case …." Here, the circuit court overruled Mr. Scorse's summary judgment motion and all claims remained pending. Therefore, the circuit court was authorized to enter an order under Rule 74.04(d) identifying the facts as to which no substantial controversy had been shown.

12

Once a circuit court enters an order deeming certain facts established for all purposes under Rule 74.04(d), that order is preclusive as to those facts. The circuit court may not choose to disbelieve these facts or deem them in controversy without notice to the parties. However, the circuit court does not have to include all facts it finds as uncontroverted and established in its final judgment. Instead, it must include only the facts that are material to its conclusions of law.

**II.**

This Court must now look to the Rule 74.04(d) facts in this case and determine which of them, if any, conflict with the circuit court's final judgment and whether any such potential conflict renders the circuit court's conclusions of law incorrect. Even though Mr. Scorse suggests the circuit court erred by not including all of the Rule 74.04(d) facts, the only one he specifically claims conflicts with the circuit court's judgment is paragraph 37, which states:

> Beginning in approximately the early 1990s, Defendant Scorse and his family painted various fence posts and trees on the disputed property with purple paint warning others to not trespass on the disputed property.

Mr. Scorse argues paragraph 37 is in direct conflict with the circuit court's finding that Mr. Scorse's testimony regarding the purple paint and no trespassing signs was "not credible" because he "did not provide examples of the signs, did not show where these signs were located or if they were located on or near the disputed property, nor whether those signs identified the Scorses as the owners of the disputed property." The circuit court also noted "that while signs could easily be removed, purple paint cannot be so

13

easily removed. No evidence was presented showing purple paint on any boundary of the disputed property."

Mr. Scorse alleges that, under Rule 74.04(d), he was under no obligation to prove the facts contained in paragraph 37 further and the circuit court could not hold his failure to present photographic evidence against him. The Utilities argue paragraph 37 was ambiguous and did not provide relevant and material facts.[1]

According to the circuit court's order under Rule 74.04(d), paragraph 37 was established for all purposes, including trial, and no notice was ever given to the parties that this would not be so. As a result, paragraph 37 was established … so far as it goes. The fault in Mr. Scorse's argument is that paragraph 37 does not go very far. It states that he and his family painted some fence posts and trees, and the purpose for which they did so. But it does not state how many of these posts or trees there were, or where they were located. And it says nothing at all about "no trespassing" signs other than the purple paint itself.[2] The circuit court's finding regarding the lack of evidence of "no trespassing" signs, therefore, does not contradict paragraph 37. This is the only Rule

---

[1]  The Utilities also contend Mr. Scorse abandoned reliance upon paragraph 37 when he voluntarily provided substantial additional testimony at trial concerning the application of purple paint. This is incorrect. Nothing in Rule 74.04(d) suggests that, when an order is entered under that rule establishing a fact for all purposes, including trial, the effect of that order is negated when a party offers additional evidence about the point at trial. The established fact may be elaborated upon or added to, but it cannot be contradicted unless and until the circuit court gives notice to the parties that fact no longer is deemed established.

[2]  These purple markings are relevant because, under Missouri law, purple markings are to "be found to be reasonably likely to come to the attention of intruders for the purposes of" determining if someone committed trespass. § 569.145, RSMo Supp. 2017.

14

74.04(d) fact Mr. Scorse claims was contradicted by the circuit court's judgment and, after reviewing the Rule 74.04(d) facts and the final judgment, this Court has determined none of the other facts were contradicted (as opposed to omitted). Mr. Scorse's claim of error is denied.

**III.**

This Court must now determine whether the Rule 74.04(d) facts, combined with the facts found by the circuit court in its final judgment after trial, were such that Mr. Scorse was entitled to judgment as a matter of law on his claim of adverse possession. To succeed on an adverse possession claim, Mr. Scorse must prove his possession is "(1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for the necessary period of years prior to the commencement of action." *Watson v. Mense*, 298 S.W.3d 521, 526 (Mo. banc 2009). Mr. Scorse must meet all five elements, and the issue in this appeal is whether the Rule 74.04(d) facts and the additional facts found by the circuit court establishes each of these elements such that the circuit court was compelled to enter judgment for him on the adverse possession claim.

Mr. Scorse claims his evidence showed he "used" the Disputed Property by: (1) running cattle on the property; (2) repairing and maintaining the old fence on the north side of the property; and (3) making occasional recreational use of the property by exploring, hunting, taking family photos and similar activities. This falls short of establishing his claim as a matter of law.

Mr. Scorse argues extensively that the circuit court misapplied Missouri law by not giving sufficient weight to the evidence regarding his repair of the fence. Mr. Scorse claims the circuit court erroneously relied upon cases in which the fences were in the middle of the respective disputed properties and the claimants only attempted to show their repair of the fences was a sufficient use to show actual possession. Here, Mr. Scorse contends, the mere existence of the boundary fence on the Disputed Property (which was included in the same enclosure with land owned and conveyed to him by the grantor) qualifies as an actual, open, and notorious possession. Mr. Scorse cites *Crane v. Loy*, 436 S.W.2d 739, 740-41 (Mo. 1968), in support of this argument.

In *Crane*, however, the parties claiming adverse possession had more than just a boundary fence supporting their claim. Their predecessors farmed the land as part of the adjoining tract and, after the claimant purchased the adjoining tract, they constructed a gravel driveway and entrance to its parking area and building on the disputed piece of land. *Id.* at 740. As a result, this Court's holding in *Crane* was not as sweeping as Mr. Scorse claims and does not relieve him of the burden to show through other activities that his possession was actual, open, and notorious. Mr. Scorse failed to provide such evidence.

Mr. Scorse argues the purple markings, the building and maintenance of deer stands, and his family's other uses, such as drawing and removing water, removing rocks and stones, fishing in Shoal Creek, and exploring various caves on the Disputed Property, were sufficient to establish "actual" possession. Mr. Scorse contends this is so because the Disputed Property is wild and uncultivatable and these activities are more than

16

sufficient, combined with the boundary fence, to constitute "actual" possession. In this regard, Mr. Scorse relies, among others, on *Whiteside v. Rottger*, 913 S.W.2d 114 (Mo. App. 1995).

It is true the circuit court found the Disputed Property to be wild and undeveloped, but the cases Mr. Scorse relies upon are readily distinguishable and inapplicable. In *Whiteside*, and *Tiemann v. Nunn*, 495 S.W.3d 804 (Mo. App. 2016), the tracts of land at issue were subjected to flooding and it was not possible to erect buildings on the property. The court of appeals found the activities in those cases (hunting, fishing, removing timber, building a levy, etc.) were sufficient to establish actual possession because no other activities could be done on the property. *Whiteside*, 913 S.W.2d at 120; *Tiemann*, 495 S.W.3d at 809-10. Here, however, the Disputed Property was amenable to more actual (not to mention open and notorious) uses. In fact, Mr. Scorse testified that, if he were to prevail on his adverse possession claim, he planned to build several rental cabins and allow his cattle to graze in and among them. As a result, Mr. Scorse's occasional recreational uses, an unspecified number of purple-painted posts and trees, and the boundary fence were not sufficient to compel, as a matter of law, a finding that his possession of the Disputed Property was "actual" as required by Missouri law.

That failure, alone, is a sufficient basis on which to affirm the circuit court's judgment. However, even if Mr. Scorse's possession of the Disputed Property was "actual," it was not "exclusive." Mr. Scorse cites *Creech v. Noyes*, 87 S.W.3d 880 (Mo. App. 2002), for the standard of exclusivity, but he fails to include all of the relevant language from that opinion. The opinion states, in pertinent part: "Exclusive possession

17

means that the claimant must hold the land for himself or herself only, and not for another. To satisfy this element, *a claimant must show that he or she wholly excluded the owner from possession for the required period.*" *Id.* at 886 (emphasis added) (quotation marks and citation omitted). Mr. Scorse argues the purple paint showed his intent to exclude others from possession; however, Mr. Scorse's intent is not dispositive as to this element. To compel the circuit court to find this element as a matter of law, the evidence would have had to be such that no reasonable trier of fact could have concluded anything other than that Mr. Scorse "wholly excluded" the Utilities and the Elkans from the Disputed Property for the entire statutory period. But the evidence did not compel that finding and permit no other. Instead, there was evidence the Elkans allowed their ranch manager to ride horses through the Disputed Property three to four times a year from 1971 to 2005. Additionally, the ranch manager gave permission to his friend to hunt on the disputed property. The circuit court, as the trier of fact, was entitled to find this evidence more persuasive than Mr. Scorse's evidence regarding the exclusivity of his possession.

## Conclusion

For the foregoing reasons, the circuit court's judgment is affirmed.

_____
Paul C. Wilson, Judge

Draper, C.J., Russell, Powell,
Breckenridge and Fischer, JJ., concur.

18